ESTATE OF TOM L. BURNETT, DECEASED, ANNE V. BURNETT HALL, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109742. Promulgated October 18, 1943.

*R. B. Cannon, Esq.*, for the petitioner.
*Angus Roy Shannon, Jr., Esq.*, for the respondent.

### OPINION.

BLACK, *Judge*: This proceeding involves the determination by the respondent of individual income tax deficiencies against Tom L. Burnett, deceased, for the calendar year 1937 and the period January 1 to December 26, 1938, in the amounts of $6,106.43 and $124,694.47, respectively.

The parties have stipulated that the deficiency for the year 1937 is the amount of $4,419.93. Effect will be given to that stipulation under Rule 50.

For the period in 1938 the respondent increased the net income as disclosed by the return by seven adjustments, (a) to (g), inclusive, and decreased the net income as disclosed by the return by five adjustments, (h) to (l), inclusive. By appropriate assignments of error petitioner contests a part of adjustment (a) "Depletion restored

$15,572.35" and all of adjustment (b) "Inventories $160,800.50." In a statement attached to the deficiency notice the respondent explains adjustments (a) and (b) as follows:

(a) Depletion on lease bonuses restored to income. The amount of depletion allowed on lease bonuses, received in 1937 and 1938, on leases which expired in 1938 or which, insofar as the taxpayer is concerned, terminated with his death, has been restored to income in accordance with the provisions of article 23 (m)–10 (c) of Regulations 101.

(b) Raised livestock and feed on hand at the time of the decedent's death have been included in income for the taxable period in which the date of his death falls under the provisions of section 42 of the Revenue Act of 1938 and of the Internal Revenue Code. The adjustment is shown as follows:

Inventory of raised livestock at date of death of taxpayer_____ $154,820.00
Inventory of feed at date of death of taxpayer_____ 5,980.50

Total_____ $160,800.50

Petitioner has paid the greater part of the deficiency for the period in 1938 and, based upon the above mentioned assignments of error, claims an overpayment of taxes for the period in 1938.

The facts were stipulated. We adopt as our findings of fact the stipulation, which is substantially as follows:

Tom L. Burnett, petitioner's decedent, was an individual residing at Iowa Park, Texas. He died December 26, 1938. Thereafter petitioner was appointed independent executrix of the will and estate of Tom L. Burnett, deceased. She qualified as such and at all times since has been and now is the duly appointed, qualified, and acting independent executrix of the will and estate of Tom L. Burnett, deceased.

Throughout his lifetime Tom L. Burnett kept his books and records and filed his Federal income tax returns upon a cash receipts and disbursements basis, and upon the basis of a calendar year.

In the calendar year 1938 decedent executed various oil and gas leases covering lands, or undivided interests in land, owned by him in fee and in connection therewith he received cash oil and gas lease bonuses totaling $56,306.61, which he duly included in taxable income. He claimed and was allowed statutory percentage depletion thereon, computed at 27½ percent, in the amount of $15,484.32.

At December 26, 1938, six of such leases were outstanding and were recognized by decedent as constituting valid and subsisting oil and gas leases, and no one of them had at December 26, 1938, expired by its own terms or had been released, forfeited, or abandoned by the grantee therein because of failure to obtain production thereunder or otherwise  The lands covered by the said six oil and gas leases were still owned by decedent at December 26, 1938, and all rights acquired by the lessees under each of the said six oil and gas leases

were in nowise diminished, curtailed, or impaired because of decedent's death.

Respondent, for the taxable period ended with decedent's death, "restored to income" depletion in the amount of $4,189.19, which sum constituted a part of depletion in the sum of $15,572.35 restored to income for various reasons in the notice of deficiency from which this appeal was taken. The sum of $4,189.19 represented depletion "restored" with respect to the six leases referred to in the preceding paragraph. In making such restoration the respondent proceeded on the theory that in so far as decedent was concerned the six leases "terminated with his death."

For a number of years prior to his death the principal business of Tom L. Burnett was cattle ranching. He owned large cattle ranches located in Wichita, Cottle, Foard, and Hardeman Counties, Texas. In keeping his books and records on the basis of cash receipts and disbursements. he thereby charged off the cost of raising livestock and feed as an expense.

Decedent was a cattle raiser as distinguished from a cattle feeder. That is to say, his purchases of cattle were confined to purchase of breeding stock. He made no purchases of cattle for resale. It was his practice to "top" the female calf crop each year (i. e., to select and hold back for breeding purposes a sufficient number of the better female calves to maintain and build up his herd of breed cows) and to annually, or oftener, sell all steer calves and all inferior female calves raised within the year, aged bulls, and aged, injured, or otherwise unproductive cows, so that at all times all cows and bulls on hand were held solely for breeding purposes. A few horses were raised by decedent for work stock.

When decedent first commenced operating as a rancher and cattle raiser, which was prior to 1937, he adopted and thereafter continuously followed the practice of accounting for income from ranching operations in the following way: As purchased livestock was sold, the depreciated cost of each particular animal sold was deducted from the sale price and the excess treated as income from livestock sales for the year in which collected in cash. The entire proceeds of raised livestock were treated as gain in the year sold, there being no capitalized cost. All expenditures for wages for ranch hands, ranch supplies, pasture rents, and similar items were charged to expense and deducted from income when and as paid in cash. At no time during his lifetime did decedent use an inventory or inventories in the computation of gain from cattle sales.

At December 26, 1938, decedent owned livestock having a total fair market value of $171,408, of which livestock of the value of $16,588 had been acquired by purchase and the remainder, or livestock having

a fair market value of $154,820, had been raised by decedent as follows:

| Class | Number | Value each | Total fair market value |
|-------|--------|-----------|------------------------|
| Cows | 3,271 | $35 | $114,485 |
| Calves | 1,496 | 15 | 22,440 |
| Heifers | 363 | 35 | 12,705 |
| Horses | 102 | 30 | 3,060 |
| Mares | 41 | 20 | 820 |
| Colts | 52 | 15 | 780 |
| Hogs | 86 | 5 | 430 |
| Poultry | | | 100 |
| Total | | | $154,820 |

Decedent also had on hand raised feed stuffs having a fair market value of $5,980.50

In the notice of deficiency upon which this proceeding is based the respondent held and determined that the entire fair market value of the above described raised livestock and feed stuffs in the total amount of $160,800.50 represented "gross income" that had "accrued up to the date of his death" and that the amount thereof was properly includable in decedent's net taxable income for the taxable period in which the date of his death fell, under the provisions of section 42 of the Revenue Act of 1938.

Decedent's 1937 income tax return, as filed, disclosed a tax liability of $7,163.29, which was paid in equal quarterly installments on March 15, June 15, September 15, and December 15, 1938, respectively.

On or about May 15, 1939, under an extension of time theretofore duly granted, an individual income tax return was filed for Tom L. Burnett, deceased, for the calendar year 1938. The said return disclosed an income tax liability of $103,808.44, which (together with interest for late payment in the amount of $259.52) was paid on the following dates:

| Date of payment | | Amount |
|-----------------|------|--------|
| May 15, 1939 { Tax | $25,952.11 | |
| Interest | 259.52 | $26,211.63 |
| June 14, 1939 | | 25,952.11 |
| September 13, 1939 | | 25,952.11 |
| December 12, 1939 | | 25,952.11 |
| Total | | 104,067.96 |

Thereafter, payments were made by petitioner with respect to the 1938 deficiency as follows:

| Date of payment | Tax | Interest |
|-----------------|-----|----------|
| Jan. 21, 1942 | $83,161.10 | |
| June 20, 1942 | | $14,219.41 |
| July 20, 1942 | | 73.43 |
| Total | 83,161.10 | 14,292.84 |

That part of adjustment (a) contested by petitioner is the restoration to income in the period January 1 to December 26, 1938, of depletion in the amount of $4,189.19 which had been allowed on the bonuses received on the above mentioned six oil and gas leases which were outstanding on December 26, 1938, the date of decedent's death. Up to the date of decedent's death there had been no production from any of these six leases, but all rights acquired by the lessees thereunder were in nowise diminished, curtailed, or impaired because of decedent's death. The leases had not expired or terminated, nor had any of them been abandoned. We hold the respondent erred in restoring to income the above mentioned amount of $4,189.19. *Estate of Emma Louise G. Seeligson*, 1 T. C. 736 (on appeal, C. C. A., 5th Cir.).

We shall now consider adjustment (b), "Inventories $160,800.50," all of which is contested by petitioner. This amount represents the stipulated fair market value on the date of decedent's death of all livestock and feed stuffs which had been raised by decedent up to the date of his death but had never been reported as income by him during his lifetime because he had always reported upon the cash receipts and disbursements basis. The respondent contends that this amount of $160,800.50 must be included in computing net income for the taxable period in which falls the date of decedent's death under the last sentence of section 42 of the Revenue Act of 1938, which provides as follows:

* * * In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includable in respect of such period or a prior period.

This language first appeared in section 42 of the Revenue Act of 1934. Section 43 of the same act carried similar provisions with reference to accrued deductions to be allowed a decedent. The Report of the Committee on Ways and Means which accompanied the House Bill which contained these provisions said of them as follows:

Sections 42 and 43. Income accrued and accrued deductions of decedents: The courts have held that income accrued by a decedent on the cash basis prior to his death is not income to the estate, and under the present law, unless such income is taxable to the decedent, it escapes income tax altogether. By the same reasoning, expenses accrued prior to death cannot be deducted by the estate. Section 42 has been drawn to require the inclusion in the income of a decedent of all amounts accrued up to the date of his death regardless of the fact that he may have kept his books on a cash basis. Section 43 has also been changed so that expenses accrued prior to the death of the decedent may be deducted.

The Report of the Senate Finance Committee on these same provisions is similar to that of the House Ways and Means Committee.

Petitioner contends that the above amount of $160,800.50 does not

constitute gross income of decedent "accrued up to the date of his death" within the purview of section 42, *supra*, for the reason that, as stated in her brief, "in the absence of a sale or exchange, there neither is, nor can be, any gross income derived from mere ownership of property."

The income tax return of decedent for the period January 1 to December 26, 1938, is in evidence and it apparently includes as a part of decedent's gross income proceeds from the sales of some cattle which had been made during the period in question but for which payments had not yet been received at the time of his death, and also it apparently includes as deductions some expenses and taxes which had been incurred but not yet paid at the date of decedent's death. Concerning these there is no issue in this proceeding. The return contained the following statement:

> In prior years this return has been filed on cash basis, but taxpayer died on December 26, 1938, and items of income and expense have been accrued as at that date, but cattle on hand are not included as gross income.

As far as we have been able to ascertain the exact question here presented has never been litigated. The decided cases arising under the above provision of section 42 and its prototype in other revenue acts are collected and analyzed in Mertens, Law of Federal Income Taxation, vol. 2, secs. 12.100 and 12.101. The leading case on the subject is *Helvering* v. *Enright's Estate*, 312 U. S. 636. In that case it was held that there should be included in computing the net income of the decedent there involved for the taxable period ending with his death his share of the profits of a law partnership earned and capable of an approximate valuation but not yet received, when both the decedent and the partnership reported on the cash receipts and disbursements basis. The Supreme Court, among other things, pointed out that the word "accrued" as used in section 42, *supra*, had a broader meaning than that usually given to the term and in that connection said:

> It is to be noted that no change was made by the 1934 Act in the § 48 definition of "accrued". Yet, it is obvious that the definition is inapplicable since a taxpayer on a cash basis cannot have a "method of accounting" by which the meaning of accrual is fixed. Consequently it is beside the point to give weight to provisions of the regulations or accounting practices which do not recognize accruals until a determination of compensation. Such provisions when applied bring the income into succeeding years. It has been frequently said, and correctly, that § 42 was aimed at putting the cash receipt taxpayer on the accrual basis. But that statement does not answer the meaning of accrual in this section. Accounts kept consistently on a basis other than cash receipts might treat accruals quite differently from a method designed to reflect the earned income of a cash receipt taxpayer. Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return, would appear in the estate returns. Congress sought a fair reflection of income.

The Supreme Court, in the *Enright* case, also pointed out in a footnote:

It is immaterial that all possibility of escaping an income tax is not barred, as for instance the increased value of asset items in an estate return. Act, § 113 (a) (5), 26 U. S. C. A. Int. Rev. Acts, page 697 "* * * the entire field of proper legislation [need. not] be covered by a single enactment." [Citing authorities.]

In *Estate of G. Percy McGlue*, 41 B. T. A. 1186, we held where an executor in the District of Columbia was not entitled to certain fees until completion of the administration of the estate and the allowance of such fees by the Probate Court, that such fees were not includible under section 42 of the 1934 Act in computing the net income of the executor who died during the administration of the estate for which he was acting as executor, as representing income "accrued" up to the date of the executor's death. In reversing our decision the Fourth Circuit, in *Helvering* v. *McGlue's Estate*, 119 Fed. (2d) 167, said in part:

It was the intention of Congress in enacting section 42 to reach all income earned during the life of a decedent that would otherwise escape the income tax. In giving recognition to this congressional intent, and this was the rationale of the *Enright* case, the Board must be reversed on the question of executors' fees. See H. Rep. No. 704, 73d Cong. 2d. Sess., p. 24; S. Rep. No. 558, 73d Cong. 2d Sess., p. 28.

We do not think that the instant case is controlled by the *Enright* case or by the *McGlue* case. We have here no situation comparable to the facts which were present in those cases. We have here simply the ownership of certain livestock and farm products which had been produced by the decedent on his ranches during his lifetime. This property had not been sold or exchanged by decedent at the time of his death. It was simply owned. No one was indebted to him for its fair market value or any part thereof. We do not think that the mere ownership of this property by decedent at the time of his death, even though it had been produced on his ranches during his lifetime, caused it to be gross income accrued to him up to the date of his death within the meaning of the language used in section 42 of the Revenue Act of 1938. It may be within the power of Congress to include such property as accrued income in a decedent's gross income for the period ending with his death, but we do not think that it has manifested any intention to do so in section 42 of the Revenue Act of 1938 which is applicable here. On this issue the Commissioner is reversed.

It is perhaps appropriate at the conclusion of this opinion that we point out that the Revenue Act of 1942 in section 134 amends section 42 of the Internal Revenue Code and adds new section 126 to the Internal Revenue Code. These new provisions of the Revenue Act of 1942 tax income of decedents heretofore covered by the last sen-

tence of section 42 to the persons who receive it, whether such persons be the executors of the decedents or his heirs, instead of to the estate of a decedent for the period ending with his death. These amendments are effective with respect to final income tax returns of decedents for taxable years beginning after December 31, 1942, and with respect to returns of persons entitled to the income of decedents (estates, testamentary trusts and heirs) for taxable years which end after December 31, 1942. The amendments are also retroactive to returns of decedents for prior years (after December 31, 1933) if the persons entitled to the income will file consents that they will recompute the tax for their taxable years as if, with respect to such amounts, provisions corresponding to these new provisions were a part of the applicable revenue laws. No such consents as provided in subdivision (g) of section 126, Revenue Act of 1942, have been filed in this proceeding or with the Commissioner in so far as we have been advised. Therefore, we have decided this case under section 42, Revenue Act of 1938, without reference to the amendments made by the Revenue Act of 1942. Neither party to this proceeding has contended that we should do otherwise.

Reviewed by the Court.

*Decision will be entered under Rule 50.*