**CAMPBELL, Collector of Internal Revenue**

v.

**PROTHRO et ux.**

**No. 14411.**

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1954.

Rives, Circuit Judge, dissented.

**332**

Melva M. Graney, Sp. Asst. to Atty. Gen., Ellis N. Slack, Charles S. Lyon, H. Brian Holland, Asst. Attys. Gen., Frank B. Potter, U. S. Atty., Midland, Tex., Tom M. Shaw, Asst. U. S. Atty., Dallas, Tex., for appellant.

R. B. Cannon, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was to recover overpayments of income taxes resulting from (1) the treatment as ordinary income of gain from the sale of breeding animals [1] and (2) the inclusion by the commissioner, as ordinary income of plaintiffs for the year 1948, of the fair market value at the date of gift of calves taxpayers had donated to the Wichita Falls Young Men's Christian Association, and it had sold.

The claim as to item two above was that this treatment by the commissioner was a distortion of plaintiff's income, was in direct contradiction of the facts, and was in violation of the fundamental theory of income tax law that it is essential to the taxation of income that it has been realized by the taxpayer to whom it is proposed to tax it.

The collector denying and putting plaintiffs to the proof of their claim, the case was tried to the court on a stipulation of facts [2] and the undisputed testimony of Prothro, and, at the conclusion

---

1. This issue is not involved in this appeal.

2. (1) Charles N. Prothro and Mrs. Charles N. (Elizabeth) Prothro are husband and wife, residing in Wichita Falls, Wichita County, Texas, within the Northern District of Texas.

(2) Ellis Campbell, Jr., defendant herein, is the duly appointed, qualified, and acting Collector of Internal Revenue for the Second Collection District of Texas. He resides and maintains his principal office in Dallas, Dallas County, Texas, within the Northern District of Texas. In collecting the taxes involved in this proceeding, defendant acted with probable cause.

(3) At all times material to this proceeding, Charles N. Prothro was engaged in the oil and ranching business for his own account and was a partner in various partnerships, one of which, Perkins-Prothro Company, was also engaged in ranching.

(4) At all times here pertinent and as a regular matter of course, plaintiffs herein, individually and the Prothro-Perkins Company partnership, kept their books and prepared their returns on a cash basis of accounting and on the basis of the calendar year.

(5) On May 7, 1948, Charles N. Prothro, plaintiff herein, conveyed to the Wichita Falls Young Men's Christian Association one hundred head of calves by an instrument in writing, which is attached hereto, marked Exhibit "A", and made a part hereof. This instrument described the calves conveyed as "one hundred head of the average of the calves branded Double 'P' (PP) on the left hip or thigh with the left ear cropped, said calves being of the 1948 calf crop and being located on what is known as the Perkins-Prothro Ranch in Cimarron County, Oklahoma." and provided for their selection by an agent of grantee.

(6) On or about June 8, 1948, Charles N. Prothro, individually; Perkins-Prothro Company, acting by and through Charles N. Prothro; the Wichita Falls Young Men's Christian Association; and Southern Methodist University, acting through their agent, A. W. King, joined in a contract with Guy C. Andis and Robert Andis, dba Andis and Son, a true copy of which contract is attached hereto, marked Exhibit "B", and made a part hereof for all purposes. This contract provided for the sale by the sellers of the 1948 calf crop with certain specified exclusions.

(7) On Oct. 22, 1948, the contract attached hereto as Exhibit "B", was con-

of the evidence, the court found for the plaintiffs on both grounds.

The collector, appealing from that part of the judgment only which had allowed recovery because of the inclusion in income of the calves given to the Y.M.C.A., is here insisting that taxpayers realized income in connection with their gift to the Y.M.C.A., and the judgment was erroneous because (1) there was insufficient proof that the gift to the Y.M.C.A. was of the calves rather than of the proceeds from their sale, and (2) if the gift was of the calves and not of the proceeds, the taxpayer realized income in making the gift.

Upon its first contention, that under Texas law, there was no valid gift of the calves but only a gift of the proceeds of their sale, appellant urges upon us that the attempted gift of the calves was incomplete and invalid for want of delivery, actual or constructive, because there was no selection and identification of the calves sold, and because, under Art. 3998, Vol. 12, Vernon's Texas Civil Statutes,[3]

if an oral gift is relied on, there must be delivery of possession to the donee, and if a written gift is relied on, the instrument effecting it must be recorded or acknowledged or witnessed for recordation, and this was not the case here.

Upon its second contention, appellant insists that, because the calves were kept for sale in the ordinary business of the partnership of which Prothro was a member, the expense of raising them had been allowed as deductions, and the proceeds of the calves if sold by taxpayers would have been ordinary income, the case is ruled by Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and similar cases,[4] in which it is in effect held that when the right of one to collect income is given to another and that other receives it, the giver is taxable on the income in the same way and to the same extent as he would have been if he had collected the income and then given it to the donee.

Appellant also relies heavily upon two office decisions published by the Bureau

summated by delivery to Guy C. Andis, and Robert Andis, dba Andis and Son, seven hundred ninety-two calves, for which there was paid an aggregate of $87,314.07, of which $11,024.40 was received by Charles N. Prothro individually; $43,216.40 was received by Perkins-Prothro Company, partnership; $11,024.40 was received by the Wichita Falls Young Men's Christian Association; and $22,048.80 was received by Southern Methodist University.

(8) The livestock sold to Andis and Son, on October 22, 1948, under the contract marked Exhibit "B", were kept in a common pasture or pastures and were sold on a volume weight basis, and the proceeds of their sale was divided in the manner hereinabove described in paragraph 7 of this stipulation. Such cattle were never physically separated as between Charles N. Prothro, the Perkins-Prothro Company, the Wichita Falls Young Men's Christian Association, and Southern Methodist University.

(9) Under the cash receipts and disbursement method of accounting employed by the partnership Perkins-Prothro Company, all costs and expenses of maintaining and raising livestock are charged to expense, and the expenses in-

curred in raising the cattle sold to Andis and Son, of which the cattle covered by the bill of sale attached hereto as Exhibit "A" were a part, have been allowed as a deduction for the years in which paid.

(10) In the computation of net income upon the basis of which the taxes involved in this proceeding were collected from Mr. Prothro as a deficiency assessment, he was allowed as a deduction a contribution to the Wichita Falls Young Men's Christian Association in the amount of $11,024.40 for such cattle.

3. "No gift of any goods or chattels shall be valid unless by deed or will, duly acknowledged or proven up and recorded, or unless actual possession shall have come to, and remained with, the donee or some one claiming under him."

4. Austin v. Commissioner of Internal Revenue, 6 Cir., 161 F.2d 666; Commissioner of Internal Revenue v. First State Bank of Stratford, 5 Cir., 168 F.2d 1004, certiorari denied, 335 U.S. 867, 69 S.Ct. 137, 93 L.Ed. 412; Doyle v. Commissioner of Internal Revenue, 4 Cir., 147 F.2d 769; Floyd v. Scofield, 193 F.2d 594; Richards' Estate v. Commissioner of Internal Revenue, 2 Cir., 150 F.2d 837.

of Internal Revenue, viz., I.T. 3910, 1948–1 Cumm. Bulletin 15 and I.T. 3992–2 Cumm. Bulletin 7.[5]

Stating: "It is well settled that income is realized by making a gift of it. That is the very essence of the familiar anticipatory assignment of income rule." and citing, in addition to the Horst case, cases which have been decided on its authority, appellant goes on to argue:

"In the present case the gift was of property wholly representing income. As already shown, the calves in the 1948 calf crop of the Perkins-Prothro partnership were not capital assets. Nor were they income-producing property. They were property which was produced and held primarily for sale to customers, which had no cost basis, and which resulted from expenditures which were wholly deductible and deducted as business operating expenses. The calves represented ordinary income in toto."

Then quoting the two Bureau decisions above referred to, appellant argues that the Horst doctrine is just as applicable to the facts of the instant case as to the facts to which this court applied it in Commissioner of Internal Revenue v. First State Bank of Stratford, 168 F.2d 1004, note 4, supra.

 Replying to appellant's first position, appellees, citing Hughes v. Sloan, Tex.Civ.App., 62 S.W.2d 194, holding that the statute appellant invokes was intended to have, and has, the effect only of protecting bona fide purchasers, insist that under the stipulated facts the written transfer to the Y.M.C.A. and what was done in connection with it, effected a valid and completed gift of the calves, C/o Hillebrant v. Brewer, 6 Tex. 45, at page 51, and that they were sold and the proceeds received not by the taxpayer but by the donee. We agree.

 Of appellant's second ground, appellees, analyzing and discussing the cases cited by appellant, including the Horst case, assert that the transaction in question here is not a Horst case transaction, nor is it similar to the transactions dealt with in the other cases appellant cites. Expanding this view, appellees go on to say:

"All of the foregoing cases have one element in common. In each of them prior to the assignment involved, the donor had a vested right to specific proceeds which, when collected, constituted income per se. The assignments involved, in these cases were accordingly held to constitute assignments of income. An additional feature present in First National Bank of Stratford, supra, was the existence of a corporation stockholder relationship, not present here, that further supported the holding of the court in that particular case. United States v. Joliet & Chicago R. Co., 315 U.S. 44 [62 S. Ct. 442, 86 L.Ed. 658].

"The fundamental defect in the Government's position in the case at bar is that the animals here in question did not per se represent 'income'. The plan or scheme of the income taxing acts is that from the realized and recognized gross income of the taxpayers, there is subtracted or withdrawn all deductions allowed by law, and the remaining balance or net taxable income subjected to tax.

" * * * Compensation for personal services and periodical returns from capital investments become 'gross income' when earned, although the time when the taxpayer is required to recognize them, that is report them for taxation, depends on taxpayer's method of accounting. Gains from the sale or exchange of

---

5. By the first of these rulings the Bureau attempted to hold that income is realized when agricultural products are contributed to a charitable institution. By the second ruling the Bureau took the position that a stock raising farmer realized income when he made an admittedly bona fide gift of some feeder cattle to his son.

property, on the other hand, do not arise, and therefore do not constitute 'gross income' until a sale or exchange for value has been consummated, regardless of taxpayer's method of accounting.

"* * * raised livestock does not constitute income per se. This is because raised livestock are not claims or demands representing income fully earned but are instead chattels created by the livestock raiser through the instrumentality of his breeding herd and having an independent basis for gain or loss in his hands. * * * Gains from raised animals can only be realized if and when they are sold or disposed of by their owner for value in a taxable transaction." Citing Estate of Burnett v. Commissioner of Internal Revenue, 2 T.C. 897.

We find ourselves in agreement with appellees' views. In the Horst case, the father, when the coupons on the bonds involved had become, or were about to become due, gave them to his son who collected them, and the court there properly held that the gift constituted an anticipatory assignment of the interest as income, within the Lucas-Earl rule (Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731). It was not there held, nor has any case cited to or found by us held that if both principal and interest are given, and the principal matures in the year of the assignment, there would be an anticipatory assignment of income as to the principal, so as to make the giver taxable on unrealized appreciation in its value, or on interest accruing in successive years. Indeed, the contrary has been held in Austin v. Commissioner of Internal Revenue, 6 Cir., 161 F.2d 666.

Here the facts are entirely different from those of any of the cited cases. Here not interest due on choses in action in the year in which the assignment is made, but calves, chattels, whose value could be realized only by a sale, were given. We have found no case, we have been referred to none holding that unrealized appreciation in the value of cattle given away would be regarded as ordinary income merely because they had no base, were kept for sale in the ordinary course of business, and when sold by the taxpayer would have been ordinary income. Cf. Visintainer v. Commissioner of Internal Revenue, 10 Cir., 187 F.2d 519 and White v. Brodrick, D. C., 104 F.Supp. 213 to the contrary.

This court in Commissioner of Internal Revenue v. First State Bank of Stratford, 5 Cir., 168 F.2d 1004, thus correctly stated, at page 1010, the principle underlying the rationale of the line of cases relied on by the commissioner:

"Mere unrealized appreciation in the value of property does not constitute taxable income; but this principle is not in conflict with the doctrine announced in the Horst and Eubank cases, in which unquestionably taxable income was involved. Unrealized appreciation, since it is not taxable income, is not covered by the rule as to anticipatory assignments of income. The latter rule is sui generis; it applies to debts, including bad debts, to the extent that they represent income."

While at page 1011, Judge Sibley, in his concurring opinion points out:

"It is true that a corporation which is contemplating a sale of its property by which a gain will be realized may, before anything is done by way of sale, decide to distribute the property in kind to its stockholders and escape taxation for the gain which it did not realize. * * *

"But the present case involves no sale by a corporation or by its stockholders, but involves the proper tax treatment of a large aggregate of debts due to the corporation which in past years the corporation, on its representation that they were bad debts and a loss, had been permitted to deduct as such with a full resulting tax benefit. This deduction was not of constitutional right, but of legislative grace, and was allowed on

terms stated in applicable Regulations. Beginning in 1918 Article 52 of Regulation 45 said: 'Bad debts or accounts charged off because of the fact that they were determined to be worthless, which are subsequently recovered, whether or not by suit, constitute income for the year in which recovered, regardless of the date when the amounts were charged off.' This language was continued down through Regulation 103, Sec. 19.42–1, under the Internal Revenue Code, when the deductions were made and allowed which are now in controversy. The restoration to income of all subsequent recoveries was a condition of the deductions."

Floyd v. Scofield, 5 Cir., 193 F.2d 594, 596, on which the collector relies does not support his position. There a corporation, having income due it, adopted a plan for liquidating and dissolving a corporation under and as a part of which the sums due it as above were paid to the stockholders instead of to the corporation. This court correctly held:

"We agree with the trial court in holding that notwithstanding the liquidating conveyance the funds in question were taxable as corporate income. The funds represent the purchase price of property owned and sold by the corporation, in transactions completed prior to the liquidation. The corporation was the owner of the funds. It could have reduced them to possession at any time. The checks were made payable to the corporation and were delivered to it. It had the choice either to collect them itself, or to direct the payment thereof to others. In electing the latter course, it exercised its power of ownership over the funds by directing payment thereof directly to its stockholders, thus enjoying an economic benefit equivalent to the actual collection of the money by the corporation."

█ We come back, then, to the point of departure. Were the calves when transferred by gift to the Y.M.C.A. realized income to the appellees in the taxable sense. We think it clear that they were not. If they were, then every appreciation in value of property passing by gift is realized income. We know that this is not so, and that, though it is and has been the contention of the Bureau that it ought to be, congress has never enacted legislation so providing.

█ If appellant's position is sustained here, it must be because the calves were already income to the taxpayers. If in their hands the calves were then their income, of course the making of the gift did not change this status. If they were not income in taxpayers' hands, their gift of them could not, in the present state of the law, result in the receipt of income by them. It is true that efforts have been made to procure the enactment of statutes to change the rule that a gift does not make the donor taxable on unrealized appreciation in the value of the property given. Congress has so far not adopted, indeed has declined to adopt that view. Under the statutes as they exist, the court may not do so. The judgment is right. It is affirmed.

RIVES, Circuit Judge (dissenting).

It seems clear to me that the gift was not completed until the calves were sold. Selection of the calves was not only necessary to a delivery under an oral gift, but was also a prerequisite under the written "Bill of Sale".[1] The one hun-

---

1. That instrument recited a nominal consideration and purported to "Grant, Bargain, Sell, and Deliver unto the said Wichita Falls Young Men's Christian Association the following described personal property, to-wit:

"One hundred (100) head of the average of the calves branded Double 'P' (PP) on the left hip or thigh with the left ear cropped, said calves being of the 1948 calf crop and being located on what is known as the Perkins-Prothro Ranch in Cimarron County, Oklahoma.

"These calves are to be selected by some agent named by the said Wichita Falls Young Men's Christian Association

dred calves were never selected. As near as that came to be accomplished was that two hundred calves were put in a separate pasture, after which they became "intermingled with the rest of the cattle on the ranch", and finally, on October 22, 1948, the seven hundred ninety-two calves kept in a common pasture or pastures were sold and the proceeds of their sale were divided so that $11,024.40 was received by the Wichita Falls Young Men's Christian Association. Then for the first time the Association took title to specific property, and that was money, the proceeds of sale.

The subject of the "Bill of Sale" was not an undivided interest in a herd of calves, but specifically one hundred calves to be selected. Selection of the calves was required by the express terms of the instrument. Clearly, until the calves were selected, the Association took no title to any specific cattle. It did not even acquire an undivided interest in the herd. See Collins v. McCanless, 179 Tenn. 656, 169 S.W.2d 850, 145 A.L.R. 1380 and attached annotation. Until the calves were selected, the gift remained executory.

Conditions precedent to the completion of gifts are not infrequent. 24 Am.Jur., Gifts, Sec. 45, see also Sec. 22; 38 C.J. S., Gifts, § 37. This precise condition, selection of the particular property out of a larger group or mass, has occurred more frequently in cases of true sale than of gift. The position of a donee, however, is certainly no stronger than that of a vendee. Even if the "Bill of Sale" evidenced a genuine sale, the rule would be the same.

In Cleveland v. Williams, 29 Tex. 204, 94 Am.Dec. 274, the vendor sold corn in his crib before his death, and appointed an agent to measure and deliver it, which the agent did after the death of the principal, but before it was known to the parties. In an action by the administrator of the deceased vendor to recover the value of the corn, the jury were charged as follows: "If you find from the evidence that the corn in question, that is the hundred bushels of corn, was in a bulk with other corn, and had not been measured out and separated from the bulk, so that the same could be identified previous to the death of Hall (vendor), then the sale was incomplete, and you will find for the plaintiff the value of the corn as proved." The Texas Supreme Court held that the charge was correct, and discussed the principle at great length. It is unnecessary to quote the sound and illuminating language of the Texas Court for there is no disagreement among any of the authorities on this question. See Blanton v. Langston, 60 Tex. 149, 150; 46 Am.Jur., Sales, Sec. 426; 77 C.J.S., Sales, § 253(2), p. 1039. The payment of $11,024.40 out of the proceeds of sale of the 792 calves completed the gift too late to prevent appellees from realizing income in that amount.

It is so clear to me that there was never any completed gift of the one hundred calves that I refrain from any discussion of the question of whether, assuming such a gift, the donor would have thereby realized income. Under the facts of this case, that question seems to me to be abstract.

I, therefore, respectfully dissent.

acting in conjunction with and in co-operation with J. J. Perkins of Wichita Falls, Wichita County, Texas, or his agent, and shall be selected from a group of four hundred (400) head, more or less, of the said 1948 calf crop, which group of four hundred (400) calves is owned equally and individually by the said J. J. Perkins and Charles N. Prothro and which group has been segregated from the remainder of the 1948 calf crop, which remainder is owned by the Part-nership of Perkins-Prothro Co. of Wichita Falls, Wichita County, Texas, and the one hundred (100) head of calves conveyed by this Bill-of-Sale are to be taken from the Charles N. Prothro one-half (½) interest in the said group of four hundred (400) head of calves.

"The Wichita Falls Young Men's Christian Association and J. J. Perkins, or his agent, shall have the equal right of selection of said four hundred (400) head of calves, * * *."