**Louis WELLHOUSE, Jr., and Rhoda W. Wellhouse, Plaintiffs,**

v.

**Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Defendant.**

No. 3819–T–C.

United States District Court
S. D. Florida,
Tampa Division.

June 5, 1961.

George W. Ericksen and Wm. Terrell Hodges, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiffs.

E. Coleman Madsen, Miami, Fla., and F. William Reeb, Tampa, Fla., for defendant.

WHITEHURST, District Judge.

This is an action arising under the provisions of the Internal Revenue Code (Title 26 U.S.C.), and is brought by the plaintiffs as husband and wife for the recovery of income tax, with interest, which was assessed and collected by the defendant with respect to the calendar tax year 1954.[1]

The cause being at issue, the plaintiffs have moved the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C., and their motion is supported by affidavits, together with various exhibits attached thereto. In response, the defendant has filed a cross-motion, together with a supporting affidavit, praying that summary judgment be entered in his favor. Each of the parties have submitted briefs, and the matter has been orally argued at length.[2]

---

1. Jurisdiction is vested in this Court by Title 28 U.S.C. § 1340.

2. The lone affidavit submitted by the defendant was executed by an attorney employed by the United States Department

The undisputed facts as reflected by all of the proceedings herein, are as follows: On June 12, 1937, the plaintiff, Louis Wellhouse, Jr. loaned the sum of $4,200 to a business associate, E. C. Welles. The transaction was evidenced by Welles' unsecured demand note in the principal amount of the loan providing for interest at the rate of 4% per annum. The money was loaned by Wellhouse to Welles so as to enable the latter to make an investment in the Circle Barr Cattle Corporation, a Florida corporation engaged in the business of raising and marketing cattle.

It was understood between the parties that payment of the note would not be demanded by Wellhouse until a liquidation or other disposition of the assets of the corporation actually produced funds to Welles enabling him to satisfy his obligation.

Welles died on June 11, 1950, and the condition of liquidation or disposition of the assets of the corporation had not been effected. Consequently, no demand for payment on the note of either principal or interest had been made, nor had Welles voluntarily made any such payment. On February 16, 1951, Wellhouse filed a proof of claim in Welles' estate totaling $6,384—the principal amount of the note ($4,200) plus interest accrued to the date of Welles' death ($2,184). The claim was filed even though the condition attached to the note had not been fulfilled because Florida law (Florida Statutes § 733.16, F.S.A.) specifies that all claims against an estate, including contingencies, must be filed within a given period or else they become barred.

Welles' widow elected to renounce her husband's will and claim her right of dower as provided by law. Through 1953, the executors of Welles' estate engaged in numerous transactions preparing for allocation of the widow's dower share and other distributions as directed by the testator's will. None of this activity, however, effected any change with respect to the assets of the Circle Barr Cattle Corporation thereby fulfilling the condition attached to the Welles note.

On October 22, 1953, Wellhouse formally assigned and delivered the note and proof of claim against Welles' estate to a charitable, non-profit corporation. In the following year, on February 2, 1954, the estate voluntarily paid Wellhouse's charitable assignee the sum of $6,384 representing the principal amount of the note, $4,200, plus accrued interest as of Welles' death in the amount of $2,184. The attorney for the estate had advised payment at that time principally because of the moral obligation of the decedent, the then availability of cash in the estate, and the fact that the outstanding contingent liability constituted an obstacle to closing the estate.

In due course, the Internal Revenue Service took the position that the interest ($2,184) paid to the charitable corporation in 1954 was income to the plaintiffs despite the fact that it was actually realized only by the charitable assignee.

Accordingly, a deficiency was assessed against the plaintiffs for 1954 in the amount of $1,357.02, the tax due after

---

of Justice and assigned to defend this action. The affidavit reflects on its face that it was prepared by the affiant "upon knowledge and information gained from examination of the files of the Internal Revenue Service * * *." As such, the affidavit does not comply with the express requirements of Rule 56(e) of the Federal Rules of Civil Procedure, and the Court has on plaintiffs' motion, refused to consider such of it as is not made on personal knowledge of the affiant and thus does not show affirmatively that the affiant is competent to testify thereto. See Maddox v. Aetna Casualty and Surety Company, 5 Cir., 1958, 259 F.2d 51; Roucher v. Traders & General Insurance Company, 5 Cir., 1956, 235 F.2d 423; Inglett & Company v. Everglades Fertilizer Company, 5 Cir., 1958, 255 F.2d 342. Moreover, and in any event, counsel for the defendant elected, at the hearing, to stand upon the factual recitations in plaintiffs' affidavits as affording sufficient basis in themselves for entry of a judgment in favor of the defendant.

adding the disputed interest item to plaintiffs' reported income for such year. The plaintiffs paid the asserted deficiency, plus interest, and now press this suit for its recovery.[3]

The sole issue is whether the interest payment in 1954 by Welles' estate to the charitable corporation constituted income to the recipient, or income to the plaintiffs who had previously transferred the obligation. In resolving this issue it is necessary to determine the applicability of the well-known "constructive receipt" or "anticipatory assignment" of income doctrine originally formulated in Lucas v. Earl, 1929, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. The principle was applied by Justice Holmes through utilization of the often-quoted metaphor that fruit should not be attributed to a different tree from that on which it grew.

In recent years the Lucas v. Earl "anticipatory assignment" rule has been involved in a substantial volume of litigation covering a wide variety of factual situations. Nothing would be gained by a detailed and comprehensive analysis of that sizable body of law, and only a few of the decisions need be specifically mentioned in disposing of this controversy. Suffice it to say that the many opinions on the subject have formed a definite pattern, and certain established rules have evolved which tend to clearly delineate the periphery or scope of the anticipatory assignment doctrine.

Generally, an assignment of income, or the "fruit" only, will not escape the tax, and when the income is received by the assignee in the year of assignment, it will be taxed to the assignor. The theory is that the assignor has received the economic benefit of the income, especially where he owes a duty to the assignee by family ties or otherwise. Lucas v. Earl, supra; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, gift of negotiable interest coupons collected by the taxpayer's son in the year of assignment; Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, gift of renewal commissions by an insurance agent, collected by the assignee in the year of assignment; Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, gift by a beneficiary of a trust of the year's income therefrom to her children.

If the corpus, income producing property or "tree" itself is assigned in addition to the income of "fruits", however, the income has been held not to be taxable to the assignor. E. g., Pearce v. Commissioner, 1941, 315 U.S. 543, 62 S.Ct. 754, 86 L.Ed. 1016, husband purchased an annuity for his wife; Cold Metal Process Co. v. Commissioner, 6 Cir., 1957, 247 F.2d 864, transfer of patent as well as royalties; United States v. Horschel, 9 Cir., 1953, 205 F.2d 646; assignment, inter alia, of promissory notes. See also, Campbell v. Prothro, 5 Cir., 1954, 209 F.2d 331, and McGehee v. Commissioner, 5 Cir., 1958, 260 F.2d 818. But in one case, the assignment of a note with accrued interest did not shift the tax where the accrued interest was indisputably collectible in the year of assignment, and was paid in the same year. Austin v. Commissioner, 6 Cir., 1947, 161 F.2d 666.

Finally, even though the income has accrued upon gift of the tree and its fruits, it will not be taxable to the assignor, if there was real doubt at the time of assignment, as to the collectibility of the income—the amount or time of payment, or whether it would be paid at all. E. g. Cold Metal Process Co. v.

3. In his answer the defendant alternatively alleged that if the interest item was not income to the plaintiffs in 1954, it should be treated as income to them in 1953 (when assigned), and an equitable recoupment allowed to the defendant for 1953 on that basis. Aside from the obvious question raised by this plea concerning the statute of limitations, the recoupment defense was apparently asserted merely to cover the possibility that the plaintiffs would contend that the interest was income to them, if at all, only in 1953. No such contention has been made however, and the defendant waives his recoupment defense in his brief. Only the calendar tax year 1954 is at issue in the case.

Commissioner, supra; Telephone Directory Advertising Co. v. United States, 1956, 142 F.Supp. 884, 135 Ct.Cl. 670; Commissioner v. Timken, 6 Cir., 1944, 141 F.2d 625; Austin v. Commissioner, supra.

■ Analyzing the facts of the case at bar in light of the above authorities, the Court is convinced that the interest payment by Welles' estate in 1954 did not constitute income to the plaintiffs. There are two principal reasons supporting this conclusion.

First, at the time the note and proof of claim were assigned by Wellhouse in 1953, there was considerable legal doubt as to when the obligation would be paid, or if it would be paid at all. There can be no question that the date the obligation might be paid was wholly undeterminable and depended entirely upon settlement of the estate. Also, the widow's dower interest had not been allocated or ascertained, and the applicable Florida statute [4] specifically provides that the dower interest shall be apportioned free of all debts and expenses of administration. Thus, payment of the note and interest would necessarily have to await distribution of the widow's interest even though the estate was apparently solvent. There was also the possibility that certain legal defenses were available to the estate. The condition precedent to demand and payment had not occurred, and as plaintiffs point out, the applicable statute of limitations [5] may have been available to the estate as a defense. The defendant counters these factors by urging that, under Florida law [6] the estate had already waived any possible defenses

it might have had by failing to file a timely objection to the Wellhouse proof of claim. The point is, however, that there were real legal *doubts* concerning the time and extent of collectibility of the note at the time of assignment.

It is unnecessary for this court to attempt in retrospect, to resolve those legal questions concerning state law in the form of findings of fact. The only certainty is that the collectibility of the note was tainted with doubt, and at best, the charitable assignee was faced with the likelihood of costly litigation in connection with its chose of action—the note and proof of claim. This factor is sufficient to exonerate the plaintiffs under Cold Metal Process Co. v. Commissioner, and other decisions, supra.

Secondly, it is significant that the plaintiffs, as cash-basis calendar-year taxpayers, had divested themselves of all interest in the note during the tax year preceding the year of payment. The note, with the interest, was not paid during the year of assignment. In all of the cases discussed above, especially where the "tree" as well as its "fruit" was assigned, no income derived in subsequent years was taxed to the assignor. See Campbell v. Prothro, supra, and Commissioner v. Timken, 6 Cir., 1944, 141 F.2d 625.

There being no genuine issue as to any material fact, and the Court having concluded that the plaintiffs are entitled to judgment as a matter of law, judgment will be entered for the plaintiff in the amount of $1,487.27 with interest thereon as provided by law from November 21, 1956.

---

4. Florida Statute, § 731.34 (1959), F.S.A.

5. The Florida Courts have held that the five-year limitations period of Florida Statute 95.11(3) begins to run upon execution of demand notes and not from the date of demand. Syerson v. Kimball, Fla.1949, 40 So.2d 781; Wester v. Rigdon, Fla.App.1959, 110 So.2d 470.

6. Goggin v. Shanley, Fla.1955, 81 So.2d 728; Ellard v. Godwin, Fla.1955, 77 So. 2d 617.