**Clyde G. TATUM and Veta Rae Tatum, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 24361.**

United States Court of Appeals Fifth Circuit.

Sept. 6, 1968.

William H. Evans, Lubbock, Tex., for petitioners.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Louis M. Kauder, Attys., Dept. of Justice, Lester R. Uretz, Chief Counsel, I.R.S., Richard P. Milloy, Atty., I.R.S., Washington, D. C., for respondent.

Before BELL, COLEMAN, and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Petitioners are owners of farm land. They entered into verbal agreements with share-crop tenants under which the tenants agreed to pay as land rent fractional parts of the crops produced. In 1961 and 1962 petitioners made donations to charities of grain and cotton crops [1]

---

1. The donations were made by delivery to the donees of negotiable warehouse receipts and cotton classing cards.

grown on the rented land by share-crop tenants and paid in kind as land rent. On their federal income tax returns petitioners did not include in gross income any part of the value of the crops when donated or their sale price when sold by the charities, but claimed as a charitable deduction [2] the amounts received by the donees upon sale of the crops. For each tax year involved the crop rents were received by petitioners, donated by them to the charities and sold by the donees, all within that tax year.[3]

Petitioners used a cash receipts and expenditures method of accounting and were on a calendar year basis. The Commissioner asserted a deficiency based on failure to include the value of the donated crop shares in gross income and failure to reduce farm expenses deductions for the years of the donations by the portion of expenses allocable to the donated crops. Petitioners concede that if they did not realize taxable income they overstated farm expenses by the amounts properly allocable to the donated crop shares. The deductibility of the charitable contributions is not challenged by the Commissioner.

Under petitioners' rental agreement the tenant paid the expenses of producing crops on the rented land, except that petitioners furnished fertilizer and insecticide for one-third of the grain crop and one-fourth of the cotton crop. Landlord and tenant mutually planned the amount and location of crops and the application of fertilizer, insecticides and water. The tenant performed all work and paid all other expenses. When the crops were harvested the tenant paid to petitioners as rent one-third of the grain and one-fourth of the cotton produced.

Petitioners sued in the Tax Court which upheld the Commissioner's deficiency determination. The Tax Court treated the issue under traditional concepts of power to dispose of income, Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940), i. e., exercise of power to procure payment of income to another is the enjoyment, and hence the realization, of income by the one who exercises the power.

Section 61(a) of the Internal Revenue Code, 26 U.S.C.A. § 61(a), defines gross income as "all income from whatever source derived." The Treasury Regulations relating to gross income of farmers, Treas.Reg. § 1.61–4(a), (b), provide that "crop shares (whether or not considered rent under State law) shall be included in gross income as of the year in which the crop shares are reduced to money or the equivalent of money." This provision is applicable to farmers employing the cash or accrual method of accounting alike.

The tax consequences of § 61 and Treasury Regulation § 1.61–4 are sought to be avoided by petitioners' assertion of the distinction between an assignment of income, which remains taxable to the donor, and an assignment of appreciated property, which shifts the tax to the donee. Application of this distinction to farm products has long been a matter of dispute.

The Internal Revenue Service first sought to apply the assignment of income principle of Helvering v. Horst to farmers' gifts of crops. I.T. 3910, 1948–1 Cum.Bull. 15, took the position that the fair market value of wheat donated by a farmer to charity was includable in the farmer's gross income. The Commissioner understood farm products as being "in the nature of income," and the gift to charity was an event of sufficient enjoyment of the income to amount to a realization.[4] A

---

**2.** Int.Rev.Code of 1954, § 170(c), 26 U.S. C.A. § 170(c).

**3.** We are not concerned with a gift of crop shares in one tax year and conversion of the shares into cash by the donee in a different tax year.

**4.** "The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it." Helvering v. Horst, supra, 311 U.S. at 118, 61 S.Ct. at 147, 85 L.Ed. at 79.

similar result was reached in I.T. 3932, 1948–2 Cum.Bull. 7, which involved a gift of livestock from a cattleman to his son. Both rulings rested on the proposition that appreciation in an income item, the growing crop or livestock, was realized when the farmer assigned his interest to another. This concept, as well as the Commissioner's characterization of the products as income items, was uniformly rejected by the courts. Campbell v. Prothro, 209 F.2d 331 (5th Cir. 1954); White v. Brodrick, 104 F.Supp. 213 (D. Kan.1952); Estate of W. G. Farrier, 15 T.C. 277 (1950); Elsie SoRelle, 22 T.C. 459 (1954). The courts were of the view that such gifts of farm products were transfers of income producing property, not of income,[5] and that a gift of income producing property was not considered to be an event whereby appreciation in value was realized.[6] Following these decisions farmers were entitled to multiple tax benefits when crops were assigned to another.[7]

The Commissioner acquiesced in the views of the courts. I.T. 3910 was revoked by Rev.Rul. 55–138, 1955–1 Cum. Bull. 223, which held farm products given to charity need not be included in gross income, and the farmer was nevertheless entitled to a charitable deduction measured by the fair market value of the crops at the time of the gift.[8] See also Rev.Rul. 55–531, 1955–2 Cum.Bull. 520, applying the same principle to a gift of farm products to the farmer's son.

Though forced to draw back from his attempts to apply Helvering v. Horst to gifts by farmers, the Commissioner has continued to rule that gifts of share-crop rents by landlords are distinguishable from gifts of crops by farmers, and that a gift by a landlord is an assignment of rental income, not a gift of appreciated property. Rev.Rul. 63–66, 1963–1 Cum.Bull. 13. The case before us is the first to test the validity of this distinction.[9]

The question has both factual and legal aspects. If petitioners in fact are farmers they are entitled to be treated as any other farmer and need not include the value of the crop shares in gross income. A factual conclusion that petitioners are farmers would end the matter and would pretermit the legal question whether crop shares are income assets or appreciated property. But if it is determined as a matter of fact that petitioners are not farmers but landlords, there remains the question whether the

---

5. "The assignment of income principles of *Horst* and related cases were, therefore, not applicable, since no income had as yet been 'earned' or realized by the donor who had merely made a gift of the property itself before any realization of the income. The income, if there ever was to be any, had to await the sale of the donated property, and thus the gift involved no element of an assignment of 'earned' income."
   Lyon & Eustice, Assignment of Income: Fruit and Tree as Irrigated by the P.G. Lake Case, 17 Tax L.Rev. 295, 380–81 (1962).

6. Promulgation of I.T. 3910 and I.T. 3932 also spawned a debate among leading tax scholars and practitioners on the subject of realization of income with respect to farm products. See Miller, Gifts of Income and of Property: What the Horst Case Decides, 5 Tax L.Rev. 1 (1949); Griswold, Charitable Gifts of Income and the Internal Revenue Code, 65 Harv.L. Rev. 84 (1951); Bittker, Charitable Gifts

of Income; Another View, 65 Harv.L.Rev. 1375 (1952); Griswold, In Brief Reply, 65 Harv.L.Rev. 1389 (1952). See also Note, 62 Harv.L.Rev. 1181 (1949).

7. A farmer who donated crops to an individual or to a noncharitable organization was not required to include their value in gross income, but was nevertheless entitled to a deduction for the expenses of their production. If the gift was to charity the farmer was permitted a charitable deduction in addition to the above benefits.

8. Rev.Rul. 55–138 also held the farmer was not permitted a deduction for the expenses incurred in producing the donated products.

9. United States v. Myra Foundation, 382 F.2d 107 (8th Cir. 1967), though involving similar factual considerations, dealt with the question whether share-crop income constitutes taxable unrelated business income under Int.Rev.Code of 1954, §§ 511–513, 26 U.S.C.A. §§ 511–513.

Commissioner correctly distinguished between crops in the hands of a farmer and crop shares in the hands of a landlord.

■ In our opinion the stipulation of the parties and the conclusion of the Tax Court dispose of the factual question.[10] Petitioners are landlords, not operating farmers.[11] The portion of the stipulation on which the Tax Court relied is set out in the margin.[12] The Tax Court did not state in specific terms a conclusion that petitioners are not farmers, but reading its decision as a whole we are of the opinion such a factual determination necessarily underlay its disposition of the case. The factual conclusions of the Tax Court based on this stipulation are not clearly erroneous, and this is the standard we must apply. See Estate of Broadhead v. Commissioner of Internal Revenue, 391 F.2d 841 (5th Cir. 1968).

■ Turning to the question of law we conclude that crop shares in the hands of the landlord essentially are income assets, taxable when reduced to money or the equivalent of money, rather than, like crops in the hands of a farmer, appreciated property items not taxable if assigned to a third party prior to the realization of any income.

■ An operating farmer who donates crops to a third party prior to a taxable event, and prior to the point at which he must recognize income,[13] is not required to include the value of the crops in gross income. Rev.Rule 55–138, supra; Rev.Rul. 55–531, supra. The farmer has done nothing more than assign to another a property asset which has appreciated in value. There has been no taxable event. Neither the harvesting

10. A variety of relationships may be established between a land owner and a farm operator depending upon the facts of a particular case. "The contract can create a landlord-tenant relationship, an employer-employee relationship, a partnership or a joint venture." United States v. Myra foundation, supra at 110. See also Lyon & Eustice, supra at 333 n. 157. The factual determination in any given case must take into account both the terms of the contract and the conduct of the parties pursuant to the contract.

11. Petitioners concede, at least by implication, that there is a factual distinction between them and operating farmers. They argue, however, that because the Internal Revenue Code treats them *as if* they were farmers for some purposes, they should be treated like operating farmers for present purposes. The sections relied on, Int.Rev.Code of 1954, § 175(c) (2) (soil and water conservation expenses), 180(b) (fertilizer expenses), 182(c) (2) (expenses for clearing land), and 6420(c) (3) (payments for gasoline used for farming purposes), are special provisions conferring tax advantages under particular circumstances and do not purport to touch the question whether a landlord receives potentially taxable income when he receives crop shares from his tenants. We see no merit to the argument.

12. "The verbal rental agreement between the petitioners as landlord, and the respective tenants on the farms, provided that the tenants would pay the expense of producing crops upon the lands of the petitioners, except for fertilizer and insecticides as may be used in farming the lands, and that upon the harvesting of the crops, and as rent, the tenants pay to the petitioners as landlord, one-third of all the grain produced upon the lands and one-fourth of all the cotton and cottonseed produced upon the lands. This arrangement is typical and universal of share cropping farm lands to cotton and grain where the tenant furnishes all the labor, machinery, and seed, and the landlord furnishes the land, irrigation wells and pumps, and pays his respective percentage of insecticides and fertilizers used, being one-third of the insecticides and fertilizers as may be used in the grain crop, and one-fourth of the insecticides and fertilizers as may be used in the cotton crop. The landlord and tenant mutually plan the amount and location of crops on the lands and the matters of applications of fertilizer, insecticide, and water. The tenant performs all of the work and pays all expenses, except as stated above. The produce is delivered for the account of the landowner, to the extent of his share, as ginned cotton at a gin, and as harvested grain at a grain warehouse or elevator."

13. See Treas.Reg. § 1.61–4(a), (b).

of the crop [14] nor the donative transfer is a taxable event. E. g., Campbell v. Prothro, supra. Thus far Congress has not seen fit to tax unrealized appreciation in property value.[15]

The share-crop landlord, on the other hand, enters an agreement with his tenant whereby the tenant is given the use of the land in return for a share of the crops produced. When the crops are harvested and delivered [16] the landlord has been paid in kind for the use of his land. Crop shares representing payment by the tenant for the use of the land are rental income assets no less than money paid for the same purpose.

Although there is no distinction in the essential income nature of crop rents as against rent in any other form, Treas. Reg. § 1.61–4(a), (b) accords to share-crop landlords the privilege of waiting until the crop shares are reduced to money before recognizing the income. This accounting procedure is a rule of administrative convenience, made necessary by the absence of cash with which to pay the tax prior to a sale and by difficulties in abstract valuation of farm products, but this rule of deferred reporting of income has no bearing on the underlying question whether potentially taxable income exists. Because recognition is deferred the unsold (or uncontributed) crop shares occupy a special position in tax nomenclature—they are best described as "potential income assets." [17] See Estate of Davison v. United States, 292 F.2d 937, 155 Ct.Cl. 290 (1961).[18] The shares are income items,

---

14. But see Griswold, Charitable Gifts of Income and the Internal Revenue Code, 65 Harv.L.Rev. 84, 86–87 (1951).

15. An argument often advanced in support of this favorable tax treatment arises from the parallel between an operating farmer and an investor. Neither the farmer nor the investor is required to include unrealized appreciation in gross income. But each is nevertheless entitled to a charitable deduction measured by the fair market value of the appreciated property on the date of a charitable gift. It is argued that requiring a farmer to include the value of his crops in gross income would result in disparate tax treatment of similar transactions. See, e. g., Bittker, Charitable Gifts of Income; Another View, 65 Harv.L.Rev. 1375 (1952). Any change in the tax consequences of a gift to charity of appreciated property, by either investor or farmer, is a matter for the Congress and not the courts.

16. Here delivery of the crops was effected by delivery of warehouse receipts.

17. Crop shares have also been termed "deferred but realized income." Eustice, Contract Rights, Capital Gain, and Assignment of Income—The Ferrer Case, 20 Tax L.Rev. 1, 40 (1964).

18. The reasoning in Estate of Davison v. United States is instructive. That case involved the question of whether crop shares received by a landlord were income in respect of a decedent under § 691 of the Code, but to resolve this issue it was necessary to consider the nature of the shares:

"Crops received as rent exist in the hands of the lessor as a unique kind of property which can be described, like a right to receive future income, as a potential income asset. * * *

"Now if a landlord died while in possession of certain crops which he had received as rent we believe that under present law the essential income nature of these crops would follow the crops into the landlord's estate. The crops would remain *crop-rents* in the hands of the estate and would represent a form of income in respect of a decedent. * * * Only when the estate finally sold the crops would income be recognized. But at that point the money derived from the sale would be taxable, and taxable as income in respect of a decedent.

* * * * *

"In the instant case the decedent had not received the disputed crop-rents. The plaintiff can derive no benefit from this fact. The decedent's estate comprised among other things a right to collect crop-rents that had been earned prior to decedent's death. * * *

[The crop rents] first became recognized as income and taxable when they were sold for the account of the estate. At that point the income-producing potential of the crops had been fully achieved and was taxable. In this manner congressional purpose is fulfilled. The privilege of not recognizing the crop-rents as income until their sale is extended from the decedent to her estate, but what is in reality earned

but because recognition is postponed until they are reduced to money or its equivalent they are not immediately taxable.[19]

■ The precise point at which "realization," in the technical sense, occurs is academic for purposes of this case. Receipt of the shares, the gift of them to charities, and the charities' disposition all occurred within the same taxable year. Thus we leave for future cases the resolution of the question of the year in which sharecrop rental income is taxable when the various transactions occur in different tax years. For present purposes it is enough to say that crop shares are potential income assets, not property, and that a landlord may not avoid taxation by assigning his rights to the income prior to the reduction of the crop shares to money or its equivalent. The assignment of income principles of Helvering v. Horst, supra, and the rule of Treas.Reg. § 1.61(a) are applicable to this case and dispositive of the issues it presents.

We are aware of Peterson v. United States, 65–2 U.S. Tax Cas. ¶ 9674 (E.D. Wash.1965), in which the district court, without discussion or analysis of the authorities and principles that might be relevant, entered a general conclusion of law that the fair market value of the crop rent should not have been included

in gross income. The Tax Court declined to follow that decision and we do also.

The judgment of the Tax Court is affirmed.

---

income does not escape its intended proportionate burden of taxation."
292 F.2d at 942–943. (Emphasis in original.)

The taxability of crop shares received as rent by a corporation and distributed as dividends prior to sale was considered by the Tax Court in A.B.C.D. Lands, Inc., 41 T.C. 840 (1964), but the court chose to rest its decision on the imputed income doctrine of United States v. Lynch, 192 F.2d 718 (9th Cir. 1951), cert. denied, 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342 (1952). But see the citation of A.B.C.D. Lands in Adolph Weinberg, 44 T.C. 233 (1965), where it is viewed as an assignment of income case.

19. For a general discussion of the assignment of crops and crop shares, see Hawkinson, Farm Expenses and General Ac-

counting Principles, 22 Tax L.Rev. 237, 265–69 (1967); Eustice, Contract Rights, Capital Gain, and Assignment of Income—The Ferrer Case, 20 Tax L.Rev. 1, 40–41 (1964); Lyon & Eustice, Assignment of Income: Fruit and Tree as Irrigated by the P.G. Lake Case, 17 Tax L.Rev. 295, 329–35, 379–86 (1962); Rudick & Gray, Bounty Twice Blessed: Tax Consequences of Gifts of Property to or in Trust for Charity, 16 Tax L.Rev. 273, 285–86 (1961); Roehner & Roehner, Realization: Administrative Convenience or Constitutional Requirement? 8 Tax L. Rev. 173, 186–90 (1953); Eliasberg, Section 170; Recent Developments on the "What," "When," and "How Much" of Charitable Giving, 44 Taxes 418, 444–45 (1966). See also the Griswold, Bittker and Miller articles cited at note 6 supra.