**MORGAN GUARANTY TRUST COMPANY OF NEW YORK**

v.

**The UNITED STATES.**

**No. 460–73.**

United States Court of Claims.

Oct. 18, 1978.

Lydia E. Kess, New York City, attorney of record, for plaintiff; Davis Polk & Wardwell, John A. Corry, and H. Reed Wasson, New York City, of counsel.

Robert S. Watkins, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Donald H. Olson, Patricia B. Tucker, and James S. Maxwell, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## OPINION

KASHIWA, Judge:

This income tax refund suit is before the court upon a joint stipulation of facts. Although the legal issues presented by the case are not new, they are by their very nature difficult. After a careful review of the stipulations, exhibits, briefs, and oral arguments presented, we find plaintiff is entitled to recover with the amount of recovery to be determined in a proceeding pursuant to Rule 131(c).

The case involves two separate issues. The first issue is whether plaintiff's March 15, 1962, gift to a charity of the right to receive all future payments on awards made by the Mixed Claims Commission (hereinafter referred to as MCC) constitutes an anticipatory assignment of income to the donee, a charitable trust, so as to justify the Internal Revenue Service's inclusion of the future payments in plaintiff's income in the year (1964) the payments are received by

the donee.[1] Collateral to this issue is defendant's contention that if we hold for plaintiff on the assignment of income question because actual receipt of the payments was highly questionable at the time of the gift, then defendant is entitled to an offset against the refund owed under the doctrine of equitable recoupment. The second issue is whether plaintiff, an accrual basis taxpayer, must include in its 1964 gross income prepaid interest (i. e., interest actually received from its customers during the 1964 taxable year, but which was not earned or accruable under general accrual accounting principles until plaintiff's 1965 taxable year). Finally, since we find that plaintiff is entitled to recover on both issues, we must address defendant's contingent contention of whether part of plaintiff's refund recovery is barred by the statute of limitations.

The genesis of the assignment of income issue is traceable to the establishment of the MCC in 1922 to determine the amount to be paid by Germany in satisfaction of Germany's financial obligations to the United States and its nationals for losses and damages sustained during World War I.[2] During the 1920's and the 1930's the MCC determined the amounts of awards to be paid to United States nationals in respect of claims against Germany which it determined to be valid. Under the Settlement of War Claims Act of 1928, as amended,[3] all payments by Germany in respect of such awards were deposited in a German special account in the United States Treasury. The Secretary of the Treasury was authorized to make payments to award holders from such account in accordance with certain priority rules prescribed by the statute.

In 1930 under the terms of a separate agreement, the German government issued bonds to the United States in amounts believed sufficient to pay all the awards made and to be made by the MCC.[4] These bonds were to mature serially from 1930 to 1981, but no payments were ever made on account of any bonds maturing after September 30, 1931.

In 1953, after more than 20 years during which the German government made no payments in respect of the awards, a new agreement was entered into between the United States and the Federal Republic of Germany to settle the obligations for MCC awards still outstanding.[5] The Federal Republic of Germany agreed to pay $97,500,-000 in 26 annual installments from April 1, 1953, through April 1, 1978, and issued 26 non-interest bearing bonds to the United States to evidence this obligation. All of the payments under these bonds (except for a fee of one-half of 1 percent which the United States was authorized to deduct from each payment to an award holder) were to be applied by the United States in respect of amounts due to United States nationals and would suffice to amortize a

1. The only taxable year before the court in this case is 1964. However, at oral argument the court was informed by counsel that the Internal Revenue Service has raised the assignment of income issue in each of plaintiff's subsequent taxable years at least through 1976. Although we only decide the assignment of income question for 1964 in this suit, our decision for the 1964 taxable year may have ramifications as to the subsequent years also. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

2. Claims Agreement, August 10, 1922, United States-Germany, 42 Stat. 2200, T.S. No. 665.

3. Settlement of War Claims Act of 1928, Pub.L. No. 122, ch. 167, 45 Stat. 254, amended by the Joint Resolution of March 10, 1930, Pub.Res. No. 48, ch. 75, 46 Stat. 84; the Act of June 21, 1930, Pub.L. No. 411, ch. 568, 46 Stat. 796; the Joint Resolution of June 14, 1932, Pub.Res. No. 27, ch. 259, 47 Stat. 318; the Act of March 3, 1933, Pub.L. No. 426, ch. 210, 47 Stat. 1488; the Joint Resolution of June 12, 1933, Pub.Res. No. 11, ch. 60, 48 Stat. 125; the Joint Resolution of June 18, 1934, Pub.Res. No. 38, ch. 608, 48 Stat. 1019; the Joint Resolution of June 27, 1934, Pub.Res. No. 365, ch. 851, 48 Stat. 1267; the Joint Resolution of June 26, 1936, Pub.Res. No. 136, ch. 852, 49 Stat. 1984; the Joint Resolution of May 23, 1938, Pub.Res. No. 98, ch. 263, 52 Stat. 437; and the Act of August 6, 1947, Pub.L. No. 375, ch. 506, 61 Stat. 789.

4. 106 L.N.T.S. 121; see Pub.L. 307, ch. 402, 46 Stat. 500 (1930).

5. 4 U.S.T. 908; T.I.A.S. No. 2796.

substantial portion, but not all, of the awards.[6]

The parties have stipulated that by 1962 the long-term obligations of the Federal Republic of Germany (such as the ones issued to fund the 1953 settlement agreement) held no greater risks for the United States investors than long-term obligations of any of the most stable and highly industrialized foreign countries. While the market price of long-term obligations of the Federal Republic of Germany in 1962 reflected the risks inherent in any long-term obligation, the price did not reflect any specific concern as to the probability that the obligations would be met. The full faith and credit of the Federal Republic of Germany stood behind the serial bonds issued in 1953. Further, from the time of the 1953 agreement the Federal Republic of Germany has paid each payment when due on the bonds. No event had occurred prior to March 15, 1962 (the date of the charitable gift in issue here), which would indicate it would fail to meet the remaining obligations.

Under the Settlement of War Claims Act of 1928, as amended through 1947, the amount owed to each award holder was determined by adding to each award interest accrued to January 1, 1928. To this total, termed "statutory principal," there was added simple interest of 5 percent per annum on the unpaid statutory principal. All payments prior to August 6, 1947, were applied to reduce statutory principal. After that date payments were made on account of unpaid interest on statutory principal; however, for purposes of calculating additional interest on statutory principal, such payments were deemed to reduce unpaid statutory principal. By May 1972 all unpaid interest was finally satisfied and subsequent payments were applied on account of unpaid statutory principal.

On March 15, 1962, the records of the MCC showed that principal of $1,330,215.32 and interest of $1,231,063.02 remained unpaid in respect of awards owned by plaintiff for a total of $2,561,278.34. About 67 percent of the total awards held at that time had been made as compensation for the loss of accounts in German banks at the outbreak of World War I. Some of this 67 percent was acquired by plaintiff by purchase and some was awarded plaintiff with respect to its own accounts. Of the remaining awards, about 30 percent of the total were acquired by taxpayer because of legal actions taken against debtors in default on loans. The remaining awards, which accounted for about 3 percent of the total, were made as compensation for plaintiff's loss on Prussian Treasury bills held at the beginning of World War I.

Plaintiff did not ascribe tax bases to the awards when they were originally made in the 1920's and 1930's. Rather, as payments on the awards were received over the years, they were used to reduce the plaintiff's tax bases in the underlying accounts.[7] Plaintiff's bases in the underlying accounts were reduced to zero by 1939. Accordingly, the annual payments received by plaintiff from 1953 to 1962 constituted taxable ordinary income to plaintiff when received.

On March 15, 1962, plaintiff irrevocably assigned all of its remaining interest in its awards of the MCC to the Morgan Guaranty Trust Company of New York Charitable Trust (hereinafter referred to as Trust). The Trust is a tax-exempt entity qualifying under section 501(c)(3) of the Internal Revenue Code, as amended. Plaintiff retained no interest whatsoever in the awards and all collections thereafter were received directly by the Trust.

---

**6.** For example, from the stipulated facts it appears plaintiff's MCC awards had a book value of $2,561,278.34 on March 15, 1962. The fair market value of the MCC awards was considerably less, however, because under the terms of the 1953 agreement it was estimated plaintiff would eventually only receive $2,097,109. See Exhibit 4 to the Stipulated Facts.

**7.** This method of tax accounting for amounts received was approved by the Internal Revenue Service at that time. See G.C.M. 9466, X-1 Cum. Bull. 133, 136 (1931), as modified, G.C.M. 16166, XV-1 Cum. Bull. 175 (1936) (both memoranda declared obsolete in Rev. Rul. 67-406, 1967-2 Cum. Bull. 420).

In plaintiff's 1962 taxable year it claimed, and was allowed, a charitable deduction for the fair market value of the awards ($1,050,000) it donated to the Trust. The fair market value of the assigned awards was arrived at by discounting the projected receipts by 10 percent.

In 1964 the Trust collected $118,208 from the awards. Plaintiff did not report the $118,208 payment received by the Trust as income in 1964. On audit of the plaintiff's tax return, the Internal Revenue Service determined that the donation of the awards to the Trust in 1962 constituted an anticipatory assignment of income and, consequently, that the payment of $118,208 was 1964 taxable income to plaintiff.[8] Accordingly, the Internal Revenue Service issued a deficiency notice.

The facts surrounding the prepaid interest issue are not as historically involved. Basically, plaintiff utilizes the accrual accounting method in accounting for interest income for financial reporting and federal income tax purposes and has done so for more than 50 years. The Federal Reserve Board requires plaintiff to use the accrual method of accounting for interest income for financial reporting purposes. Except where collection seems unlikely, plaintiff credits interest to income as earned, regardless of the time of receipt. On occasion, borrowers voluntarily pay interest on some loans, principally demand loans, in advance of the specified interest payment date; and such interest received in advance of the period to which it relates is included in income by plaintiff subsequently as earned. If the interest is never earned because the loan is called or because the borrower prepays the loan, plaintiff refunds the unearned portion of the interest to the borrower.

On its federal income tax return for taxable year 1964, plaintiff included in income $159,070.01 of interest received during prior taxable years but attributable to interest earned with respect to loans outstanding during 1964. On its federal income tax return for taxable year 1964, plaintiff did not include in income $165,739.75 of interest received in advance payments in 1964, to be earned in 1965, in accordance with the accrual method of accounting for interest which plaintiff had theretofore consistently followed. This amount constituted 0.13 percent of the $126,000,000 of accrued interest and discount included in plaintiff's 1964 income.

Upon audit of plaintiff's 1964 tax return, the Internal Revenue Service asserted that the $165,739.75 of interest received in advance in 1964 was taxable income to plaintiff in 1964. In making that adjustment the Internal Revenue Service did not eliminate from plaintiff's income the $159,070.01 of interest received in prior years which was attributable to interest earned with respect to loans outstanding in 1964.

Upon receipt of the deficiency notice for additional income tax due for taxable year 1964, plaintiff paid the assessed deficiency. Plaintiff filed a timely claim for refund and upon its disallowance filed the present action.

## I. Assignment of Income

■ The assignment of income doctrine is a judicial doctrine, as opposed to the general statutory nature of taxation law. The original purpose of the doctrine was to determine which taxpayer should be taxed upon income or gain derived (*Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); *Helvering v. Horst,* 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); *Helvering v. Eubank,* 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81 (1940)) and that is the issue before us herein.[9] It is a fluid doctrine, the exact

8. The Trust had received payments on the awards during both of plaintiff's taxable years 1962 and 1963. The Internal Revenue Service did not raise the assignment of income issue until the audit of plaintiff's 1964 tax return, however, and by then the statute of limitations barred the Commissioner from asserting a tax deficiency for taxable years 1962 and 1963.

9. The issue in this case could also be viewed as whether the payment received on the MCC awards will be subject to federal income taxa-

applicability of which depends upon a case-by-case approach and matters of degree. See *Blair v. Commissioner of Internal Revenue,* 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); *Harrison v. Schaffner,* 312 U.S. 579, 583, 61 S.Ct. 759, 85 L.Ed. 1055 (1941). Although the assignment of income doctrine is a distinct doctrine of its own, some commentators have suggested that one might think of it as a part of the substance-over-form principle of taxation. *Lyon and Eustice,* Assignment of Income: Fruit and Tree as Irrigated by the P. G. Lake Case, 17 Tax L.R. 295, 300 (1962).[10]

It is therefore not surprising that the parties before us so strongly disagree over the applicability or inapplicability of the doctrine to the gift of MCC awards which plaintiff made on March 15, 1962.[11] Plaintiff, citing *Blair v. Commissioner of Internal Revenue, supra,* argues that the assignment of income doctrine is not applicable because what plaintiff assigned to the Trust was its entire interest in appreciated property (in essence, zero basis interest-bearing obligations of Germany). Further, plaintiff argues that a donor of appreciated property does not realize income upon the subsequent realization of the gain by the donee, even if the proceeds of disposition or collection would have been taxable ordinary income to the donor but for the prior assignment wherein the entire interest was transferred. Finally, plaintiff asserts that the MCC awards it assigned to the Trust are not equivalent to interest income earned by plaintiff prior to the date of the gift.

█ The MCC awards are certainly property in a property law sense. They, in fact, are compensation for property which was confiscated by the German government during World War I. The Internal Revenue Service has ruled that the MCC awards are interest-bearing obligations of Germany. Rev. Rul. 66–32, 1966–1 Cum. Bull. 174; *cf. Graham v. Commissioner of Internal Revenue,* 304 F.2d 707, 709 (2d Cir. 1962); *Agency of Canadian Car & Foundry Co. v. Commissioner,* 39 T.C. 15, 26 (1962). When viewed as accounts receivable, the MCC awards are property for purposes of the charitable contribution deduction provisions (*Pauley v. United States,* 459 F.2d 624 (9th Cir. 1972)) and the capital gains tax provisions (I.R.C. § 1221(4); *cf. Graham v. Commissioner of Internal Revenue, supra; Agency of Canadian Car & Foundry Co. v. Commissioner, supra*). Based upon the above, we find that the MCC awards are property for federal taxation purposes, too.

The facts of this case establish that the MCC awards appreciated in value upon the conclusion of the 1953 settlement agreement and funding arrangement. See also the facts in *Graham v. Commissioner of Internal Revenue, supra.* Defendant does not dispute this. Nor does defendant deny that a gift of appreciated property alone does not result in income to the donor upon subsequent disposition or collection by the donee. *S. C. Johnson & Son, Inc. v. Commissioner,* 63 T.C. 778 (1975); *Humacid Co. v. Commissioner,* 42 T.C. 894, 913 (1964); *Campbell v. Prothro,* 209 F.2d 331 (5th Cir. 1954); *Palmer v. Commissioner,* 62 T.C. 684 (1974).

█ Defendant's contention is, citing *Helvering v. Horst, supra; Friedman v. Commissioner of Internal Revenue,* 346 F.2d 506 (6th Cir. 1965); *Phillips v. Commissioner of Internal Revenue,* 275 F.2d 33 (4th Cir. 1960); *Jones v. Commissioner,* 39 T.C. 404 (1962); *Rollins v. United States,* 302 F.Supp. 812 (W.D.Tex.1969); *Sheldon v. Commissioner,* 62 T.C. 96 (1974); *Doyle v. Commissioner of Internal Revenue,* 147 F.2d

---

tion at all, for if they are not taxable to plaintiff they will escape taxation because the charitable trust is tax exempt.

**10.** These same commentators have stated:

"Though difficult to describe, we know our subject [assignment of income] is an important part of the tax law. It is something of which every tax man knows a little, but no tax man knows enough." [*Id.* at 296.]

**11.** The parties are in agreement that, in considering whether the assignment of income doctrine is applicable to the $118,208 payment in 1964, the court must focus on the facts as they existed at the date of the transfer on March 15, 1962. We agree that this is the critical date from which we must review the facts.

769 (4th Cir. 1945); *Jones v. United States,* 531 F.2d 1343 (6th Cir. 1976); *Kinsey v. Commissioner of Internal Revenue,* 477 F.2d 1058 (2d Cir. 1973); *Hudspeth v. United States,* 471 F.2d 275 (8th Cir. 1972), that where the property transferred is substantially the equivalent of income, and the probability of receipt on the income is reasonably certain, the donor remains liable for the income tax on the income later received by the donee. We note that as a matter of law there is no merit in defendant's argument that the transfer of the MCC awards to the Trust was an assignment of "earned" income on the ground that, at the time the transfer was made, there was a reasonable probability that the income would be paid to plaintiff. *S. C. Johnson & Son, Inc. v. Commissioner, supra,* at 785. We agree with the Tax Court's reasoning in *S. C. Johnson & Son* that:

> * * * There is nearly always a "reasonable probability" that income will be derived from a gift of appreciated property to a charitable organization. This was true of the collection of the promissory notes in *Humacid Co., supra,* the sale of the calves in *Campbell v. Prothro, supra,* the cutting of the timber in *Stuart A. Rogers, supra,* [38 T.C. 785 (1962)], and the disposition of the interest in the racehorse in *Sheppard v. United States, supra,* [361 F.2d 972, 176 Ct.Cl. 244]. Indeed, the only way in which the charitable purpose could have been accomplished in each of those cases was to convert the appreciated property to cash. That such was a conversion occurred after the gift was made did not mean that the taxpayer assigned income which had already been earned. See also *Grove v. Commissioner [of Internal Revenue],* 490 F.2d 241 (C.A. 2, 1973), affirming a Memorandum Opinion of this Court; *Behrend v. United States,* an unreported case (C.A. 4, 1972, 31 AFTR 2d 73–406, 73–1 USTC par. 9123); *Dewitt v. United States,* 204 Ct.Cl. 274 (1974). * * * [*Id.* at 785.]

▮ The case law requires more than a reasonable expectation or anticipation of income before the assignment of income doctrine is applicable. The Tax Court aptly pointed this out in *S. C. Johnson & Son* as follows:

> Where the taxpayer has already disposed of the appreciated property and is entitled only to its proceeds, or where his rights to its proceeds have so "matured" or "ripened" that he has a right to the gain, he is taxable thereon even though he purports to transfer the property to someone else. Thus, in *Rollins v. United States,* 302 F.Supp. 812 (W.D.Tex.1969), the court held that the donor was taxable on the proceeds of a sale by the donee of gifted property because the contract of sale was executed before the gift. In *Harold N. Sheldon,* 62 T.C. 96 (1974), the taxpayer transferred baled cotton to a cooperative which placed it in a marketing pool. The taxpayer merely made a gift of the right to receive the sales proceeds from the cooperative, and this Court held that the transfer did not relieve the taxpayer of taxation on the proceeds. Finally, the donor in *Smith's Estate v. Commissioner [of Internal Revenue], supra,* [292 F.2d 478 (C.A. 3, 1961)], was held liable for the tax on a dividend where the dividend was declared before a gift of the stock was made. See also *Estate of Bertha May Holmes, supra,* [1 T.C. 508 (1943)]. The mere anticipation or expectation of income, however, no matter how well founded, is insufficient to cause the donor to incur liability for a tax on such income. *Daniel D. Palmer, supra* at 695; *Behrend v. United States,* 31 AFTR 2d at 73–408, 73–1 USTC par. 9123. [*Id.* at 786.]

The other cases cited by defendant also involve the happening of some event which gave rise to a matured right to income. Thus, in *Jones v. United States, supra; Kinsey v. Commissioner of Internal Revenue, supra;* and *Hudspeth v. United States, supra,* there was the irrevocable election to conduct a section 337 corporate liquidation; and in *Doyle v. Commissioner of Internal Revenue, supra,* there was the plaintiff's winning of a suit in the Court of Claims shortly before the gift involved therein.

■ We think the facts of this case demonstrate that no fixed right to income had matured at the time plaintiff transferred to the MCC awards to the Trust.

It is clear that plaintiff had no right to receive the payment of the awards at the time of the transfer to the Trust. Under the provisions of the Settlement of War Claims Act of 1928, as amended, an MCC award holder had no claim against the United States for the amount of the awards except to the extent that currency was received from Germany to fund such payments. The terms of the 1953 agreement and funding arrangement with the Federal Republic of Germany provided that payment (and then only partial payment) of the amount of the outstanding awards was to be made in installments over a period of years (1953–1978). Thus, any claim plaintiff might have for payment accrued annually after the 1953 agreement with Germany was finalized. It appears that plaintiff could have sold its MCC awards to a third party. If it had, the right to payment would have become fixed as to the third party. But plaintiff did not. Instead, plaintiff held its awards, which were in essence accounts receivable, collecting each payment as due. It did so until it made the charitable gift to the Trust. Viewed as such, we find this case similar to the gift of appreciated promissory notes to charitable organizations in *Humacid Co. v. Commissioner, supra*, wherein the Tax Court held there was no assignment of income. *Id.* at 913.[12]

Nor do we find the payment of the awards involved in this case to be imminent to the same degree as in the cases cited by the defendant. The receipt of the income by the donee in the cases cited by defendant involves receipt of the income by the donee within 12 months after the date of the gift. Thus, in *Rollins v. United States, supra,* the income was received within 5 months from the date of the gift; in *Sheldon v. Commissioner, supra,* within 6 months; in *Jones v. United States, supra,* within 4 to 7 months; in *Kinsey v. Commissioner of Internal Revenue, supra,* within 3 to 5 months; and in *Hudspeth v. United States, supra,* within 1 to 2 months. However, the donee (Trust) in the present case did not receive the $118,208 payment in dispute until 1964—better than two years after the date of the gift.[13]

■ Alternatively, defendant argues, citing *Helvering v. Horst, supra; Jones v. United States,* 395 F.2d 938 (6th Cir. 1968); *Friedman v. Commissioner of Internal Revenue, supra,* that even if we do not hold that the MCC awards were substantially the equivalent of income under the sales and corporate liquidation cases, *supra,* we should still hold plaintiff made an assignment of income on March 15, 1962, because what plaintiff assigned was interest earned prior to the date (i. e., "earned interest"). We do not agree with this argument either.

It is not clear to us whether the payments remaining after 1962 (16 in number) were payments of interest or principal. Under the complex statutory rules of the Settlement of War Claims Act of 1928, as amended, the 1964 payment involved in this case was a payment of interest; yet for purposes of computing further interest, the payment was deemed a payment of unpaid statutory principal. However, we doubt, as other courts have doubted, whether we should allow the statutory rubric placed upon the payments by the Settlement of War Claims Act of 1928, as amended, to control the characterization of the payments for tax purposes. *See Helvering v. Drier,* 79 F.2d 501 (4th Cir. 1935); *Commissioner of Internal Revenue v. Speyer,* 77 F.2d 824 (2d Cir. 1935); *Commissioner of Internal Revenue v. Ullmann,* 77 F.2d 827 (2d Cir. 1935). We feel the payments placed under the statuto-

---

12. We note that the Internal Revenue Service does not agree with the holding in *Humacid Co. v. Commissioner, supra,* nonacq. 1966–1 Cum. Bull. 4.

13. Further, if this court held that the 1964 payment was taxable income of plaintiff and our holding was extended to subsequent tax years under the doctrine of collateral estoppel, see footnote 1, plaintiff would be taxed on payments received by the trust up to 16 years after the date of the gift.

ry rubric of interest might just as well be viewed as "interest as part of just compensation," as in inverse condemnation cases in this country.

Assuming *arguendo* that the label "interest" is applied to the 1964 payment at issue, we still find a fatal flaw in defendant's characterization of the interest as interest "earned" prior to March 15, 1962. Although under the terms of the Settlement of War Claims Act of 1928, as amended, one can argue the interest was earned prior to 1962, we do not find the 1928 act controlling in determining when the interest was earned for taxation purposes. We believe this to be especially true under the extraordinary facts surrounding the MCC awards.

This is not the first time the Internal Revenue Service has failed to get a court to agree with it as to when interest was earned on MCC awards. *See Helvering v. Drier, supra; Commissioner of Internal Revenue v. Speyer, supra; Commissioner of Internal Revenue v. Ullmann, supra.* After failing to prevail in the above cases, all of which involved cash basis taxpayers, the Internal Revenue Service reversed its position and held that cash basis taxpayers who owned MCC awards did not earn any interest income from payments on the awards until the taxpayers had recovered their capital bases. G.C.M. 16166, XV–1 Cum. Bull. 175 (1936), *rev'g* G.C.M. 9210, X–1 Cum. Bull. 129 (1931). Further, in G.C.M. 9466, X–1 Cum. Bull. 133 (1931), *as modified by* G.C.M. 16166, XV–1 Cum. Bull. 175 (1936), the Internal Revenue Service, recognizing "the wholly extraordinary character of the [MCC awards]," held that accrual taxpayers, such as plaintiff, would be treated as cash basis taxpayers for purposes of accounting for the income from the MCC awards.[14]

Under these memoranda, which were still in effect during 1962 and 1964, a taxpayer such as plaintiff (i. e., an accrual basis taxpayer) did not earn interest income on the MCC awards until it actually or constructively received the payment of the interest. Plaintiff in this case never actually or constructively received the 1964 payment for MCC awards. Instead, the payment was made directly to the Trust. Accordingly, under the Internal Revenue Service's own memoranda plaintiff cannot be deemed to have earned the interest payments resulting from MCC awards in 1964; and since receipt did not occur prior to March 15, 1962, what plaintiff assigned to the Trust in 1962 was not "earned interest."

A further reason for our rejection of defendant's alternative argument can also be found upon examination of the question of imminence. The payment of the MCC awards involved herein was simply not as imminent as in the cases cited by the defendant.

Finally, since we hold that there was no assignment of income by plaintiff on March 15, 1962, because all that was assigned was appreciated property, we do not reach defendant's contingent counterclaim that defendant is entitled, under the doctrine of equitable recoupment, to offset the amount of plaintiff's excess charitable contribution deduction claimed in 1962 against any refund owed.

## II. Prepaid Interest

Defendant's contention in regard to $165,739.75 of prepaid interest which plaintiff received in 1964 is, that to avoid a distortion or potential for distortion in plaintiff's income, plaintiff must account for the interest when received rather than when earned in the accrual accounting sense. Therefore, defendant argues the Commissioner's exercise of his power under I.R.C. § 446, wherein the Commissioner switched plaintiff's method of tax accounting for its prepaid interest to a cash basis accounting method, should be upheld as a good faith exercise of administrative discretion. Further, defendant states that this

---

14. Both G.C.M. 16166 and 9466 were declared obsolete in Rev. Rul. 67–406, 1967–2 Cum. Bull. 420. We note that Rev. Rul. 67–406 was promulgated after the date of plaintiff's charitable gift to the Trust. We do not speculate as to whether the declaration of obsolescence of the G.C.M.s was prompted by knowledge of the pendency of this case.

case is identical to *Jefferson Standard Life Insurance Co. v. United States,* 408 F.2d 842 (4th Cir. 1969), *cert. denied,* 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); *Franklin Life Insurance Co. v. United States,* 399 F.2d 757 (7th Cir. 1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969); and *Union Mutual Life Insurance Co. v. United States,* 570 F.2d 382 (1st Cir. 1978), in which the Commissioner's exercise of his section 446 power to change accounting methods to clearly reflect income was upheld. We do not agree.

■ It is clear that the Commissioner has the power to change a taxpayer's method of tax accounting from a method which distorts income to a method that clearly reflects income. I.R.C. § 446; Treas. Reg. 1.446–1(a)(2); *Automobile Club of Michigan v. Commissioner of Internal Revenue,* 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); *American Automobile Association v. United States,* 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961); *Schlude v. Commissioner of Internal Revenue,* 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963). However, where there is no distortion of income or potential for distortion under a method of tax accounting because the date income is earned is easily determinable, it is an abuse of the Commissioner's discretion to switch a taxpayer's method of tax accounting to a different method. *Boise Cascade Corp. v. United States,* 530 F.2d 1367, 208 Ct.Cl. 619, *cert. denied,* 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976); *Artnell Co. v. Commissioner of Internal Revenue,* 400 F.2d 981 (7th Cir. 1968). Also, the Supreme Court has indicated that, when reviewing tax accounting questions, deference should be paid to accounting methods which a regulatory body or agency imposes upon a business or enterprise. *See Commissioner of Internal Revenue v. Idaho Power Co.,* 418 U.S. 1, 15, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); *Commissioner of Internal Revenue v. Standard Life & Accident Co.,* 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977).

■ Upon first glance at the facts surrounding this issue, we are impressed with the *de minimis* nature of the prepaid interest plaintiff received in 1964 compared to the total taxable interest included in income ($165,739.75 compared to $126,000,000 reported interest income). This alone raises a question in our minds of whether there was or existed the potential for material income distortion under plaintiff's regular accrual tax accounting method. When we couple the *de minimis* nature of the amount of prepaid income plaintiff received with the fact that plaintiff consistently has reported its prepaid interest on the regular accrual accounting method for many years, and the fact that the plaintiff was required to use the accrual method of accounting by the Federal Reserve Board, we find the conclusion inescapable that there was no material distortion of income occurring under plaintiff's regular accrual tax accounting method for prepaid interest, nor the potential for such distortion. We think this conclusion is further buttressed by the fact that the date upon which the prepaid interest was subsequently earned could be computed to the day. Such was not the case under the artificial accounting methods employed in *Automobile Club of Michigan v. Commissioner of Internal Revenue, supra; American Automobile Association v. United States, supra;* and *Schlude v. Commissioner of Internal Revenue, supra.* Accordingly, we hold that the Commissioner abused his discretion in this case when he switched plaintiff from its regular accrual tax accounting method to the cash basis method for purposes of accounting for its prepaid interest.

In so holding, we distinguish the three insurance cases cited by defendant, *Jefferson Standard Life Insurance Co. v. United States, supra; Franklin Life Insurance Co. v. United States, supra; Union Mutual Life Insurance Co. v. United States, supra.* The critical difference between the prepaid interest issue in those cases and this case is that the loan agreements in the insurance company cases all required prepayment of the interest as a condition of the loan. The was no such condition in the loan agreements in this case. Further, in the insurance company cases the taxpayers were not

switched to a hybrid method of accounting (i. e., partially accrual method and partially the cash basis method). The holding of those cases is that the insurance companies, if they had been strictly following the accrual accounting method, should include the prepaid interest in income for "all events" had occurred under the terms of the loan agreements which fixed the insurance companies' right to receive the income.

DAVIS, Judge, concurring:

I join fully in the opinion of the court but wish to note expressly, on the "Assignment of Income" point, an additional factor I have considered in concluding that plaintiff did not have a fixed right to the income at the time it transferred the MCC awards in 1962, to the Trust. That factor is this: although it is agreed that in 1962 the long-term obligations of the Federal Republic of Germany held no greater risks for American investors than long-term obligations of any of the most stable and highly industrialized foreign countries, it is nevertheless impossible to conclude (given the nature of international relations since World War II, especially as they concern Europe) that there were no more-than-*de minimis* risks affecting receipt of the remainder of the 26 installment payments due from the Federal Republic of Germany under the 1953 agreement. In addition to the difference in degree of imminence, that factor, in my view, distinguishes the sales and liquidation decisions which defendant cites (in all of which there was in practical effect only a minimal risk, if any at all, that the donor or assignor would not have received the proceeds if he had retained the property).

CONCLUSION OF LAW

For the foregoing reasons, we grant judgment for plaintiff on both the assignment of income and prepaid interest questions, deny defendant's contingent claim for equitable recoupment, and return the case to the Trial Division for further proceedings pursuant to Rule 131(c) of this court. In returning the case to the Trial Division, we note that defendant, in its Amended An-swer and footnote 1 of its brief, raised a statute of limitations question as to portions of plaintiff's claim should plaintiff prevail on both the assignment of income issue and the prepaid interest issue. Neither party briefed that issue at this phase of the case, so we also refer that question to the Trial Division for resolution in the Rule 131(c) proceeding.