REALTY SETTLEMENT CORP., FRANK J. BONA AND NANCY J. BONA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Realty Settlement Corp. v. Commissioner
Docket No. 10813-78.
United States Tax Court
T.C. Memo 1980-232; 1980 Tax Ct. Memo LEXIS 352; 40 T.C.M. (CCH) 569; T.C.M. (RIA) 80232; July 3, 1980, Filed *352 Frank J. Bona, for the petitioners. David R. Smith, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Petitioner
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Realty Settlement
Corp.
1975
$10,381.00
$2,595.25
Frank J. Bona
1974
7,610.00
$ 380.50
1975
36,929.96
1,846.50
Nancy J. Bona
1974
74.26
1975
13,992.28
Frank J. Bona and
Nancy J. Bona
1973
4,516.00
225.80
1976
2,519.12
503.82
125.96
Concessions having been made, the issue remaining for decision is the effect for Federal income tax purposes of two assignments of income. [2]
*353 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the accompanying exhibits, is incorporated herein by this reference. At the time the petition herein was filed, and at all other relevant times, petitioners Frank J. Bona (hereinafter Bona) and Nancy J. Bona, husband and wife, resided at 428 Porter Avenue, Buffalo, New York. They filed joint Federal income tax returns for the taxable years 1973 and 1976 with the Internal Revenue Service Center at Andover, Massachusetts. Their 1976 return was filed on September 6, 1977. They filed separate income tax returns for the years 1974 and 1975. Bona is an attorney admitted to practice law in the State of New York. Petitioner Realty Settlement Corporation (hereinafter RSC) was incorporated under the laws of the State of New York on September 18, 1973, with its principal place of business at 428 Porter Avenue, Buffalo, New York. RSC filed its Federal corporation income tax return with the District Director of Internal Revenue at Buffalo, New York, on April 7, 1977. At all relevant times, Bona owned or controlled all of RCS's outstanding stock and served as *354 RSC's president and chief operating officer. Fifty States Management Corporation (hereinafter Fifty States) is a corporation organized under the laws of the State of New York, with its principal place of business at 428 Porter Avenue, Buffalo, New York. Fifty States filed Federal corporation income tax returns for the taxable years 1973, 1974, and 1975. At all times relevant herein, Bona was president of Fifty States and controlled all of its outstanding stock. Fifty States is not a party to this case. On September 5, 1973, Bona and Benderson Development Co., Inc. (hereinafter Benderson) entered into an agreement whereby Bona was to receive the sum of $75,000 for services previously rendered, and to be rendered, in providing information to Benderson on real estate investment opportunities. This agreement provided in part: That [Benderson] agrees that for the consulting services heretofore rendered by [Bona] to [Benderson], and [Bona] in his discretion over the next three months may from time to time present such other and further investment possibilities and counseling, on a non-exclusive basis to [Benderson], [Benderson] agrees to pay to [Bona] the sum of *355 $75,000.00 payable as follows: A. $15,000.00 in cash or certified check upon the execution of this agreement. B. $25,000.00 payable on or before January 2, 1974. C. $35,000.00 payable on or before January 2, 1975. From time to time, Bona alerted Benderson to real estate opportunities in various cities; however, Benderson never made any purchases in reliance on Bona's advice. Also on September 5, 1973, an agreement was executed between Fifty States and Bona, in which Fifty States agreed to sell property located at 437 Washington Street, Buffalo, New York, to Robinson Land Development Corp. and Bona assigned to Fifty States the $75,000 to be received by him from Benderson for his investment counseling services. This agreement, which was signed by Nancy J. Bona, as vice-president and secretary, on behalf of Fifty States, provided: WHEREAS it is desired that the litigation instituted recently by FIFTY STATES MANAGEMENT CORP hereinafter referred to as FIFTY STATES against PIONEER AUTO PARKS, INC., etc. be continued by FIFTY STATES and, WHEREAS real estate taxes on the premises commonly known as 437 Washington Street, Buffalo, New York, which premises are owned by FIFTY *356 STATES, are several years in arrears, and WHEREAS it now appears that PIONEER does not intend to pay its portion of the real estate taxes, or payment of interest and principal for August and September, 1973, and WHEREAS, there are no funds available to pay for said tax arrears or mortgage payments, and, WHEREAS, the mortgagee and the City of Buffalo may institute proceedings in foreclosure for the said arrears, IT IS agreed that FIFTY STATES will sell the subject premises to the Benderson Interests, namely Robinson Land Development Corp. pursuant to contract of Sale and purchase of Real Property dated September 5, 1973. IT IS further agreed in consideration of the sum of $1.00 and other good and valuable considerations, receipt whereof is hereby acknowledged by one party to the other, that Frank J. Bona hereby assigns to FIFTY STATES all funds which are to be paid pursuant to agreement between Benderson Development Corp. and Frank J. Bona, as attorney, dated September 5, 1973 and said parties further acknowledge and do hereby consent that in consideration of the many and diverse past services and services to be rendered in the litigation hereinbefore referred to, that the *357 said Frank J. Bona is authorized to receive and use the said funds in any manner in his sole discretion and in the full amount thereof and for his own personal use, if he so elects, in which later event they are loans to him less advance fees not to exceed $7800 annually until settlement of accounts and which adjusted sum is repayable commencing four years after the aforementioned litigation is resolved or terminated payable 4% or more annually of the principal balance and a like 4% of the principal annually thereafter, all without interest, until paid in full. The amount owing for services which is not to exceed 40% of any recovery or $75.00 per hour of services, whichever is more, and the statement of all accounts between the parties is to be established before the third anniversary of the termination of said litigation. Bona executed a promissory note on September 5, 1973, in the amount of $75,000, payable to Fifty States. Notwithstanding the above-described agreement, $69,790 of the $75,000 received from Benderson was paid directly to Bona on the following dates and in the following amounts: [3]
*358 Date
Amount
9/5/73
$15,000
1/3/74
19,790
1/2/75
35,000
Each of the payments was made by check payable to Bona and endorsed by him. None of the checks was endorsed by or on behalf of Fifty States. The $69,790 was used by Bona to pay personal expenses in the years 1973 through 1975 and no part thereof had been repaid by him to Fifty States as of September 1979, the time of trial of this case. On September 5, 1973, an agreement was also executed between Fifty States, as seller, and Robinson Land Development Corp., as purchaser, for the sale of premises known as " No. 437 Washington & 2-20 Broadway" in the city of Buffalo, New York. On June 30, 1975, RSC and Ellicott Square Associates entered into a contract providing for the purchase by RSC from Ellicott Square Associates of a large office building in Buffalo known as the Ellicott Square Building. At that time, Morgan Guaranty Trust Co. (hereinafter Morgan Guaranty) held a mortgage on the Ellicott Square Building with an outstanding balance of approximately $4,500,000. Morgan Guaranty refused to approve the assumption of the mortgage by RSC. Consequently, on July 10, 1975, RSC assigned *359 the contract to purchase the Ellicott Square Building to James Sandonato (hereinafter Sandonato), a real estate broker. In consideration of this assignment, Sandonato agreed to pay RSC the sum of $50,000, in three installments between July 10, 1975, and July 22, 1975. The agreement was conditioned upon Sandonato entering a further agreement giving Bona a 25-percent interest in any corporation to which Sandonato transferred the purchased property. Sandonato was willing to make the $50,000 payment without knowing whether Morgan Guaranty would accept assumption of the mortgage by him, because the property to be purchased appeared to be worth $5,000,000 and the purchase was to be completely financed, i.e., no down payment was to be required. However, Morgan Guaranty also declined to approve Sandonato's assumption of the mortgage, and the plan for the purchase of the building by him failed. On July 10, 1975, RSC also entered into an agreement with Fifty States conveying RSC's interest in the assignment agreement with Sandonato to Fifty States, in exchange for consideration of $500. This agreement, signed by Nancy J. Bona as vice-president on behalf of RSC and Fifty States and by *360 Bona on behalf of Fifty States, provided as follows: WHEREAS, FIFTY STATES MANAGEMENT CORP. has pending litigation between PIONEER AUTO PARKS, INC. and other litigation and rights which may represent substantial assets and REALTY SETTLEMENT CORP does not have any such assets, and WHEREAS substantial credit and funding may be required to consummate the agreement dated June 30th, 1975 between ELLICOTT SQUARE ASSOCIATES and REALTY SETTLEMENT CORP., and WHEREAS the possibilities of such consummation is better with FIFTY STATES MANAGEMENT CORP., IT IS agreed by and between REALTY SETTLEMENT CORP. and FIFTY STATES MANAGEMENT CORP. that in consideration of the sum of Five hundred ($500.00) dollars paid by FIFTY STATES MANAGEMENT CORP. to REALTY SETTLEMENT CORP., receipt whereof is hereby acknowledged that REALTY SETTLEMENT CORP. conveys all its rights, title and interest and funds due it, in and to the agreement dated July 10, 1975, with JAMES SANDONATO to FIFTY STATES MANAGEMENT CORP. On July 10, 1975, Fifty States also entered into an agreement to loan to Bona, without interest, any funds received by Fifty States by reason of the assignment to it of RSC's rights under the agreement *361 with Sandonato. The repayment terms were similar to those set forth in the September 5, 1973, agreement between Bona and Fifty States, but the time at which repayment should commence was conditioned upon the resolution or termination of different litigation than that specified in the former agreement. The agreement was signed by Bona and by Nancy J. Bona on behalf of Fifty States and RSC. Bona executed a promissory note in the amount of $50,000 payable to the order of Fifty States. Morgan Guaranty also failed to approve the assumption of the mortgage on the Ellicott Square Building by Fifty States. The deal to putchase the building was, therefore, never consummated. Sandonato paid the $50,000 fee as agreed between him and RSC. One payment of $35,000 was made on August 5, 1975, when a check in that amount drawn by Benderson and payable to New K Realty Corp., a corporation operated by Sandonato, was endorsed to RSC and deposited in RSC's checking account. [4]
On its 1975 Federal income tax return, RSC did not report as income from this transaction any part of the $50,000 paid by Sandonato. RSC *362 reported the $500 received from Fifty States as income in 1975. Fifty States reported as income the $50,000 which Sandonato had paid. No part of the $75,000 paid by Benderson during 1973, 1974, and 1975, under its September 5, 1973, agreement with Bona was reported by Bona or Nancy J. Bona on their Federal income tax returns for those years. Fifty States reported $6,100 of gross income in 1973, $19,500 in 1974, and $73,000 (including $50,000 from the Sandonato transaction) on its 1975 return. [5]
*363 On each of its Federal income tax returns for the years 1973, 1974, and 1975, Fifty States reported a large net operating loss carryover which more than offset the total gross income in each year; thus, Fifty States reported no Federal income tax liability for any of those years. Respondent determined that the $50,000 paid by Sandonato constituted income taxable to RSC in 1975. [6] Respondent also determined that the amount of $15,000 paid by Benderson in 1973 was income to Frank J. Bona and Nancy J. Bona in that year and that the amounts of $19,790 and $35,000 paid by Benderson in 1974 and 1975, respectively, were income to Frank J. Bona in those years. OPINION The issue for decision is to whom income received under two contracts is taxable. In both instances, the right to receive the income was assigned to Fifty States, a corporation controlled by petitioner Bona which is not a party to this case. Petitioners contend that such income is properly taxable to Fifty *364 States. Respondent, however, asserts that the income is taxable to the assignors -- Bona, in one instance, and petitioner, RSC, another corporation controlled by Bona, in the other. We agree with respondent. It is a well-settled principle of Federal tax law that income will be taxed to the one who earns it or otherwise creates the right to receive it and enjoy the benefit of it when paid. Helvering v. Horst,311 U.S. 112 (1940); Lucas v. Earl, 281 U.S. 111 (1930). A taxpayer may not avoid his tax liability by the simple expedient of drawing up legal papers assigning income which he has earned to another. Trousdale v. Commissioner, 16 T.C. 1056, 1065 (1951), affd. 219 F. 2d 563 (9th Cir. 1955). The written instruments by which the assignments involved herein were made reveal transfers solely of the right to receive income without assignment of the duties or property which created the right to receive it. The first assignment transferred to Fifty States $75,000 to be received by Bona under a contract with Benderson Development Co., Inc., as compensation for services which, according to Bona's own testimony, he *365 actually did perform. This is not an instance where the corporate assignee became obligated to perform services and might, therefore, be entitled to compensation. [7] Rather, as in Lucas v. Earl, supra, and Helvering v. Eubank, 311 U.S. 122 (1940), the assignor performed the services by which the income was earned and assigned only the right to receive the income. [8]
The second assignment in question, made by RSC, transferred to Fifty States all of RSC's rights under a contract with Sandonato, whereby RSC, in exchange for payments totaling $50,000, *366 had assigned to Sandonato its contractual rights to purchase certain property. No duties or obligations under the contract with Sandonato remained to be performed by Fifty States. The right to receive the income was already fixed and the property from which the right arose was not transferred to Fifty States. Thus, Morgan Guaranty Trust Co. of New York v. United States, 218 Ct. Cl. 57, 585 F.2d 988 (1978), and Blair v. Commissioner, 300 U.S. 5 (1937), relied on by petitioners, are distinguishable. In both those cases, the underlying property and the right to the future income therefrom were transferred. In neither case was the fruit separated from the tree nor was earned income involved. See Townsend v. Commissioner, 37 T.C. 830, 838 (1962). Petitioners contend, however, that the written agreements do not reflect the substance of the transactions which occurred. They assert that the $75,000, designated compensation in the contract between Bona and Benderson signed on September 5, 1973, was actually an additional part of the sale price of land sold by Fifty States to Robinson Land Development Corp, an affiliate of Benderson, *367 on that same date. Petitioners contend that Benderson insisted on this form of the agreements in order to obtain certain tax benefits. Petitioners also claim that if the mortgage had approved purchase of the property in question by Fifty States, Fifty States would have transferred an interest in the property to Sandonato in exchange for the $50,000 paid to him. This Court and the Second Circuit Court of Appeals, to which an appeal herein would lie, have applied the rule that "strong proof" must be adduced by a taxpayer if he seeks to establish a position at variance with the language of a written agreement to which he was a party. Spector v. Commissioner, 71 T.C. 1017, 1023 (1979), on appeal (5th Cir., Oct. 3, 1979); Ullman v. Commissioner, 264 F.2d 305, 308 (2d Cir. 1959), affg. 29 T.C. 129 (1957). If the agreement has some "independent basis in fact or some arguable relationship with business reality," the taxpayer will be bound by the tax consequences apparent on the face of the agreement. Schulz v. Commissioner,294 F.2d 52, 55 (9th Cir. 1961), affg. 34 T.C. 235 (1960); Spector v. Commissioner, supra at 1023. *368 See also Buffalo Tool and Die Meg. Co. v. Commissioner, 74 T.C.     (May 27, 1980), and cases discussed therein. While the signing of the various agreements involved in each instance on the same date, and certain statements in the preambles of each assignment agreement, would be consistent with petitioners' explanations, we do not think that those factors in conjunction with Bona's self-serving statements constitute strong proof that the written agreements did not reflect the substance of the transactions. We are particularly skeptical because of the tax advantages which could be reaped if Fifty States, a corporation with high net loss carryovers, rather than Bona or RSC, reported the income. Petitioners failed to call Sandonato or a representative of Benderson as witnesses and, since petitioners had the burden of proof, we infer that such testimony would not have been favorable to them. Stoumen v. Commissioner,208 F.2d 903, 907 (3d Cir. 1953), affg. a Memorandum Opinion of this Court; Bresler v. Commissioner, 65 T.C. 182, 188 (1975); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). *369 In fact, were we to look beyond the face of the agreements involved herein, we would have to question whether the purported assignments to Fifty States were ever carried out. The record shows that, with the exception of one payment which is not in question herein, see n. 3, supra, all of the assigned payments were received by the assignor and there is no evidence that they were ever turned over to Fifty States, the assignee. In sum, we find that neither of the assignments of income in question was effective to transfer Federal income tax liability from the assignors, Bona and RSC, who earned such income, to the purported assignee, Fifty States. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable years at issue, unless otherwise indicated.↩
2. No issue remains to be decided with respect to the year 1976 or with respect to Nancy J. Bona's tax liability for the years 1974 and 1975. Although the stipulation does not explicitly so state, we assume that concessions have been made with regard to the asserted additions to tax, since the dparties stated at trial that only the Federal income tax effects of the two assignments were unresolved and no argument was made on brief with respect to the additions. In this connection, we note that the allegations of error in the petition are addressed only to the bases upon which respondent determined the underlying deficiencies.↩
3. The parties have stipulated that the remaining $5,210 was paid in 1974 by Benderson to Robinson Land Development Corp. to cover a debt in that amount owed by Fifty States to Robinson Land Development Corp. as a result of prior besiness dealings. It is not included as income to Bona in respondent's determinations of deficiencies.↩
4. The record does not reveal when or how the balance of $15,000 was paid.↩
5. Amounts received in 1973, 1974, and 1975 from Benderson were $15,000, $25,000, and $35,000. At trial, Bona testified that the $8,900 discrepancy in 1973 represented legal fees paid to him by Fifty States, and reported as income by him, which was "netted out" by Fifty States rather than reported and then deducted. The Bonas reported $8,900 as compensation on their 1973 income tax return,but, since Bona testified that Fifty States owed him that amount as compensation for services, we are not prepared to conclude that the Bonas reported any amount as compensation received from Benderson. Petitioners offer a similar explanation with respect to the year 1975 on brief, but the figures reported on the Bonas' separate returns are not sufficient to support such an explanation.↩
6. RSC's additional income, as determined by respondent, was only $49,500, the $500 received from Fifty States and reported by RSC as income being treated as part of the $50,000 and not an additional amount.↩
7. Compare Foglesong v. Commissioner,     F.2d     (7th Cir. Apr. 29, 1980), revg. a Memorandum Opinion of this Court; Stewart Trust v. Commissioner, 63 T.C. 682, 694↩ (1975). 8. Moreover, not only did Bona, as assignor, have use and enjoyment of the funds through control over their disposition, see Helvering v. Horst, 311 U.S. 112, 118↩ (1940), but he also retained actual use of the funds for his personal benefit, through purported interest-free loans made to him by the assignee, Fifty States, which he had, as of the date of trial, not yet repaid.