Roger P. **DUDDEN** and Marcia **Dudden, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellee.**

No. 88–2880.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1989.

Decided Jan. 4, 1990.

James L. Goodman, Marshalltown, Iowa, for appellants.

Howard M. Soloman, Washington, D.C., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and LARSON,* Senior District Judge.

MAGILL, Circuit Judge.

Roger P. Dudden and Marcia Dudden (the Duddens), appellants and cash method taxpayers, appeal a tax court [1] ruling confirming the Commissioner of Internal Revenue's (the Commissioner's) assessment of a tax deficiency for the taxable years ending December 31, 1980 and December 31, 1981. We must decide whether the acquisition of replacement gilts, pursuant to a sow lease agreement between the Duddens and their closely held farm corporation, represented rental income which the Duddens should have recognized. We affirm the tax court ruling.

## I.

The Duddens, sole shareholders of Dudden Farms, Inc. (DFI), an Iowa corporation engaged in the raising of hogs, held title to brood sows and gilts (the breeding herd) which were leased to DFI under a standardized sow lease agreement (the lease),[2]

---

\* THE HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Lapsley W. Hamblen, Jr., United States Tax Court.

2. The lease agreement provided in pertinent part:

2. The corporation shall be entitled to the possession of the sows and gilts so *leased* and delivered for breeding and farrowing purposes and shall be entitled to the progeny therefrom, except as otherwise provided by this agreement.

3. The sows and gilts shall be *leased* to the corporation through and including their fourth farrowing and upon completion of said fourth farrowing the sows shall be returned to *Lessor* for sale or market unless the health of any of the sows be such that they must be sooner sold. The proceeds from such sale shall be the property of the *Lessor*.

4. For each sow returned to *Lessor* as above provided, or which dies while in the possession of the *Lessee,* one (1) two hundred twenty pound gilt shall be selected and conveyed to *lessor* as a replacement for such sow and shall be the consideration to *Lessor* for this Agreement.

. . . . .

6. *Lessor* shall at all times remain the sole owner of the animals *leased* hereunder and in no event shall the relationship between Corporation and *Lessor* be considered a joint venture, partnership or any other relationship other than *Lessor* and *Lessee.* The Corporation shall not mortgage, pledge or otherwise

dated July 1, 1976. Under the terms of the lease, DFI was granted possession of the breeding herd. The Duddens retained legal title to the sows. DFI was obligated to periodically [3] cull sows from the herd and return them to the Duddens while maintaining the size of the breeding herd by transferring 220–pound replacement gilts to the Duddens. DFI was entitled to all pigs farrowed, except those designated as replacement gilts. DFI was obligated to feed and care for replacement gilts until they reached a breeding weight of 270 pounds. After the transfer of 220–pound replacement gilts, the Duddens raised the gilts to a breeding weight of 270 pounds. In reality, the preparation was at the expense of DFI and represented value to the Duddens. DFI possessed all the Duddens' assets necessary for the maintenance of the gilts. Therefore, DFI was actually the provider of food and care to the gilts to the benefit of the Duddens. The Duddens reintroduced the 270–pound gilts into the breeding herd thereby re-leasing them to DFI.

DFI culled and returned 118 sows in 1980 and 109 sows in 1981 and transferred a corresponding number of replacement gilts to the Duddens. The Duddens failed to report the acquisition of replacement gilts as rental income. The tax court concluded that the Duddens realized potential rental income when DFI transferred 220–pound replacement gilts, and rental income when these gilts achieved a weight of 270 pounds, which should have been recognized when these gilts were reintroduced into the breeding herd and released to DFI.

## II.

■■■ Appellants contend that the lease created a bailment between the Duddens and DFI and, therefore, no rental obligation existed from which income could ensure. Though livestock lease agreements exhibit characteristics of bailments for mutual benefit and management contracts as well as rental agreements, the

interpretation of a court in the appropriate jurisdiction is controlling. *Vaughan v. C.I.R.*, 333 F.2d 714 (9th Cir.1964) (a management contract). We agree with the tax court that the Dudden–DFI sow lease agreement was a lease.

The Duddens and DFI contemplated the leasing of the breeding herd. The lease operated to provide a vehicle by which the Duddens, as shareholders, could draw income from their family farm corporation. The Duddens transferred the breeding herd, a leasehold interest, to DFI, and received value in the form of replacement gilts as consideration for the transfer of the leasehold interest. The Duddens retained title to but did not enjoy a current possessory interest in the breeding herd. The breeding herd remained the same size. Under the agreement, the Duddens received value in the form of replacement gilts that they did not initially possess and did not need to purchase. Clause IV specifically states that the transfer of replacement gilts would constitute "consideration" for the lease. Thus, Clause IV embodies a rental obligation on the part of DFI. Replacement gilts constituted rent, in kind transferred by DFI, as lessee, in exchange for the right to use the Duddens' breeding herd. Ordinarily, rent is taxable as ordinary income in the year it is received. I.R.C. § 61(a)(5) (1986).

DFI held title to the gilts farrowed pursuant to an explicit provision in the lease. Title to the replacement gilts vested in the Duddens when the 220–pound replacement gilts were acquired pursuant to the lease. When the replacement gilts achieved a breeding weight of 270 pounds, the Duddens realized rental income through the acquisition of sufficient incidents of beneficial ownership (i.e., title, burden and expense).

We agree with the tax court that the lease was analogous to a crop share rental agreement. *See also Strong v. C.I.R.*, 91 T.C. 627 (1988) (livestock lease agreement).

encumber *Lessor*'s animals without the written consent of *Lessor*....
Respondent's Exhibit No. 4–D (emphasis added).

**3.** After its fourth farrowing, a sow was returned to the Duddens for market.

Treasury Regulation § 1.61–4(a)(5) (as amended in 1972), the "crop share recognition rule," allows "farmers" to defer the recognition of income realized through the receipt of crop shares until a reduction to money or a money equivalent has occurred. The tax court properly construed the regulatory definition of "farmer" to include the Duddens,[4] livestock breeders functioning as farm landlords for purposes of the crop share recognition rule. Under the crop share recognition rule, rental income should have been recognized when the replacement gilts were re-leased to DFI. A conversion of livestock shares to a "money or a money equivalent" would have occurred. *See Parmer v. C.I.R.*, 468 F.2d 705, 706 (10th Cir.1972) (crop share rentals donated to a church); *Tatum v. C.I.R.*, 400 F.2d 242, 244 (5th Cir.1968) (crop share rentals donated to charity). The crop share recognition rule fosters administrative convenience in an arrangement such as a livestock lease or a crop share rental agreement where tax liability is difficult to calculate in concrete monetary terms.

### III.

In summary, the Duddens potentially realized income when rent, in the form of the acquisition of 220–pound replacement gilts, was received. The Duddens acquired sufficient incidents of beneficial ownership in the replacement gilts when the replacement gilts reached a breeding weight of 270 pounds. At this point, the Duddens realized rental income. Defraying the cost of procuring replacement animals by acquiring replacement gilts, pursuant to the lease, was the receipt of value for tax

purposes. In addition, DFI's provision of food and care was value received by the Duddens.

Reintroduction of the 270–pound replacement gilts into the breeding herd was an addition to capital constituting a disposition of an income asset for tax purposes. At this point, rental income should have been recognized.

### IV.

■ We agree with the tax court that the United States Department of Agriculture (USDA) price quotation sheets[5] would have been an accurate measure of the money equivalent of the Duddens' rental income from the acquisition of replacement gilts. The recognizable income should have consisted of the market value of a 220–pound gilt on the date significant incidents of ownership in the animals were acquired ($10,296 in 1980 and $10,533 in 1981)[6] (i.e., when the gilts were selected by Roger Dudden) and the value to the Duddens of DFI's provision of food and care for the gilts during their preparation for breeding. However, the later value will not create further tax liability for the Duddens as a result of our analysis because the Commissioner did not seek a cross-appeal to this court.

We affirm the tax court's ruling confirming the Commissioner's assessment of a tax deficiency.

---

**4.** Treasury Regulation § 1.175–3 (1960). The Duddens are "farmers" because they are taxpayers engaged in the "business of farming." The Duddens owned a "farm" since the statutory term includes "stock" and the rent DFI paid was based on production.

**5.** The sheets are published annually by the USDA Livestock and Grain Market News Service.

**6.** Rental income should have been measured by the average yearly price paid per 100–pound weight for the gilts. This measurement best approximates the rental value received, including the value of DFI's obligation under the lease to raise the replacement gilts to 220 pounds for

transfer to the Duddens, but excluding the value of DFI's provision of food and care for the gilts to a breeding weight of 270 pounds. Two hundred- to 230–pound gilts classified as U.S. 1–2 enjoyed a 1980 average yearly price of $39.76/100 pounds, while those classified as U.S. 2 garnered only $39.56/100 pounds. The prices quoted would have resulted in realized income of $10,322 and $10,270, respectively. Therefore, the 1980 average taxable rental income which the Duddens failed to report was $10,296. In 1981, the average taxable rental income was $10,533 based on average yearly price quotes of $44.07 and $43.78 for 200- to 230–pound gilts, U.S. 1–2 and 2, respectively.